## MOSES L. BACON *et al.*
### *v.*
## OLIVER P. COBB *et al.*

1. CONTRACT — *performance of — when place of delivery is not mentioned.* Where a party contracted with another for the delivery of a certain quantity of corn, at a specified time and place, at an agreed price, to be paid on delivery and inspection, which contract was fulfilled by both parties, and a short time after the vendor addressed a telegram to the vendee, offering to sell him another quantity of corn at a different price, which offer was accepted, but no mention was made of the place of delivery and inspection, or the terms of payment, — *held,* that such subsequent contract will be considered to have been made upon the same terms as the first one, as to payment, place of delivery and inspection.

2. SAME — *to excuse performance of — contract must so provide.* The rule is well established, that, where a party by his own contract creates a duty or charge upon himself, his undertaking must be substantially complied with under any and all circumstances. To excuse a performance his contract must provide for it.

3. AGENCY — *when agent will not be held liable to his principal.* Where a party contracted to deliver to another, at a specified time and place, a certain quantity of corn, to be paid for on delivery and inspection, and upon its delivery and inspection a portion of it was rejected, which portion the vendor directed the vendee to dispose of to the best advantage, and a sale was made,— *held,* that the vendee thereby became the agent of the vendor for the disposal of the corn ; and, the proof showing it to have been done to the best advantage, the proceeds thereof fully accounted for to his principal, and no negligence or fraud being shown, the principal must suffer whatever loss accrued by such sale.

4. INSTRUCTIONS — *when may be refused.* It is not error for the court to refuse to give the instructions asked by a party, provided those given covered the entire case and submitted it properly to the jury.

5. CONTRACTS — *extension of time of performance of — creates no release of the liabilities of the vendor.* Where a party agrees to accept of an article contracted to be delivered at a place or time other than that agreed upon, a performance of this is equivalent to a performance of the original undertaking. Such agreement to deliver at a different time or place creates no new contract by which the liabilities of the vendor on the original contract are changed.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case fully appear in the opinion.

Messrs. HERVEY, ANTHONY & GALT, for the appellants.

Messrs. SCAMMON, McCAGG & FULLER, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought in the Circuit Court of Cook county, by Cobb, Blaisdell and Company against Bacon and Company, to recover damages for overpayment on corn delivered by the defendants to the plaintiffs, and damages for the non-delivery of other corn which it was alleged the defendants had promised to deliver at Cairo, to the plaintiffs. The different phases of these claims are set out in eight special counts of the declaration, concluding with the common counts. The whole amount claimed was $12,207.89. The

defendants pleaded the general issue, and gave notice of special matter which they would insist upon as a defense to the action.

The jury found a verdict for the plaintiffs, and assessed the damages at $4,284.50. A motion for a new trial was overruled, and judgment rendered on the verdict.

To reverse this judgment, the defendants bring the record here by appeal, assigning thereon various errors, the principal of which are, refusing to grant a new trial on the ground that the evidence did not sustain the verdict, and for misdirection of the court on the matters of law arising on the evidence.

The theory of appellants' case is developed by the notice accompanying their plea, and we have examined the evidence as found in a very voluminous abstract of 170 printed pages, with no reference whatever, as the rule of court requires, to the pages of the record where found, the written record containing 210 pages. We have taken the testimony set out in the abstract to be correct, and on close and careful examination of it, we do not find that it sustains their theory, but establishes the plaintiffs' claim, even beyond the finding of the jury, for no damages were allowed them for profits on the 25,000 bushels of corn not delivered under the contract, and which were, at least, twenty-five cents on each bushel.

It appears, in the winter of 1864 and 1865, appellees, doing business at Cairo, were large contractors with the government, for forage. The appellants did business at Chicago, and in that winter the plaintiffs bought of defendants 45,000 bushels of corn. About 20,000 bushels were delivered at Cairo under the contracts, and a large quantity sent to Cairo by the defendants was rejected as unmerchantable and sold by plaintiffs for account of defendants.

The questions are, was the corn by the contracts to be delivered at Cairo? and was it to be merchantable? and if not merchantable whose should be the loss?

The contracts in the suit grew out of a verbal contract made by Hice, the agent of appellees with the appellants, at their office in Chicago, on the 23d of December, 1864, and was for five thousand bushels of corn, to be delivered in Cairo, and

4 — 45TH ILL.

to pass government inspection and weights, at one dollar and twenty-five cents per bushel, to be paid for as appellants shipped it, drafts to accompany the bills of lading. This corn was shipped in the month of January, 1865, and received and paid for by the appellees at Cairo, and this was the first dealing between these parties.

On the 3d day of January, 1865, defendants sent from Chicago to plaintiffs at Cairo, a telegram to this effect, " Can sell five to ten thousand, one twenty-eight. Answer immediately." On the next day, January 4th, plaintiffs answer, " Will take ten thousand bushels delivered this month." On the same day defendants reply, " Not this month — will sell ten this, and next. Answer to-day." And on the same day plaintiffs respond, " We will take it at your offer."

Although not a word is said in these telegrams about the place of delivery of the corn, or how its quality was to be ascertained, can any one doubt that it was on the terms on which they had but a few days before, by their agent Hice, purchased the five thousand bushels? But if that is not conclusive, the acts of the defendants, their conduct thoughout the transactions, from their commencement to the close, furnish the most convincing evidence that they understood the contract to be that the corn was to be delivered at Cairo at their risk, and to be paid for on delivery after inspection. For what purpose did the plaintiffs want corn? To supply their contracts with the government, which could only be done at Cairo.

If a fruiterer buys a barrel of apples of a farmer at a certain price per bushel or barrel, to be paid for on delivery at the residence of the purchaser, and on inspection, sending his bill with the apples, and it is paid for by the fruiterer, and the farmer soon after addresses a letter to the purchaser, saying that he can have twenty barrels of apples at the same price, or a greater price, as the case may be, and the fruiterer accepts the offer, — can there be any question as to the place of delivery and inspection, though not one word is said about either? The subsequent contract is supposed to be on the same terms as to delivery, inspection and payment, as the contract for the first

barrel, if there be no proof to the contrary. Such a case is within the spirit of the decision in the case of *Robbins* v. *Laswell*, 27 Ill. 365, and is the common sense of the world. If this was not the understanding of the defendants, why their complaints as found in their letters of January, February and March? And what did they mean when they wrote in the letter of January 26th, "We will do and have done our best to get cars. The I. C. R. R. officers here keep promising cars, but our men do not get them. Our men have the corn all ready to ship, and are complaining that they can get no cars." And in their letter of January 27th, say, "we have seen Robert Forsyth about cars. Has promised cars, but they do not come. Will you please write them, and have cars sent to the following places at once. You can do more with him than we can."

And if plaintiffs were to furnish transportation, would the defendants have written this letter of March 22, 1865: "Inclosed we hand you bill of lading of car 1160, corn, from Assumption. Cannot we deliver corn at Jeffersonville or Louisville; and if so, at what price? We think we can make arrangements for cars for those points." This letter seems to be in reply to one from the plaintiffs of the 17th of March, in which they say: "We hope you will be able to get your corn in, in due time. We wish you to understand that we will not take your corn at $1.25 per bushel unless you have it here in Cairo by the 31st of this month, as our time of delivery expires on that day."

And what did appellants mean by this telegram of March 11th: "Road will — take corn Monday. Can we complete our delivery?" Now, if the delivery was complete when the corn was put on the cars, it was a very foolish question; but it has a meaning, and shows of itself, most unmistakably, the delivery was to be at Cairo.

The favor asked of the plaintiffs by the defendants, that they would write to Forsyth about cars, was responded to by a letter to that effect from them to Mr. Forsyth, as they say in their letter to defendants of February 29th.

We have not been able to discover a particle of testimony

52          BACON *et al. v.* COBB *et al.*          [Sept. T.,

· Opinion of the Court.

tending to show that plaintiffs were to furnish transportation; on the contrary, the entire conduct of both parties shows most conclusively the defendants were to send the corn to Cairo at their risk, that it was to be there inspected, and if merchantable was to be paid for at the contract price.

The defendants essay to make a point that it was the plaintiffs' interference which prevented them from procuring cars; that he had appropriated the cars on the Illinois Central railroad to his own use, to their exclusion; and further, that the government had taken possession of the road and rolling stock for its purposes, and thus they were prevented from delivering on time. The record fails to show that it was contemplated the corn should go by this road. The defendants themselves asked of the plaintiffs if they would not receive the corn at Jeffersonville and Louisville, places not reached by our great thoroughfare, and it was hinted by defendants that it might go *via* St. Louis. All the great channels of communication with Cairo were open to the defendants "where to choose," and, under their contract to deliver, nothing, save the act of plaintiffs, could have absolved them from their obligation or excused a substantial performance of their undertaking. We say, nothing could have excused them; we mean to say, not even the act of God, where it may still be substantially carried into effect, although such act may make a literal and precise performance impossible.

The rule, from the earliest times to the present, is, when a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. It never has been denied that a lessee of a building, who covenants generally, to repair, is bound to rebuild the house, if it be burned by an accidental fire, even if the fire escaped from a cloud. Chitty on Con. 734. Authorities in support of this position are too numerous to be cited: we cite a few only. *School Trustees v. Bennet,* 3 Dutcher (N. J.) 513. In this case the Supreme Court of New Jersey said, "No matter how harsh, and appar-

ently unjust in its operation, the rule may occasionally be, it has its foundation in good sense and inflexible honesty. He that agrees to do an act should do it, unless absolutely impossible. He should provide against contingencies in his contract. Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or rather the law leaves it where the agreement of the parties has put it. The law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by design or neglect, inserted in their engagement."

To the same effect are *Tompkins* v. *Dudley*, 25 N. Y. 272; *Harmony et al.* v. *Bingham*, 2 Kern. (N. Y.) 99; *Adams* v. *Nichols*, 19 Pick. 275; *School District No.* 1, 25 Con. 530.

In this case the defendants well knew, when they made their contracts, that the government employed the Illinois Central railroad for the transportation of forage, munitions of war, and provisions for the vast armies they had assembled, and they knew that Cairo was an important depot for them. It was in their power, by their contracts, to protect themselves against any appropriation by the government of the use of this road, if that was the sole channel of transportation, which it was not. But there is no proof whatever that this road was managed by the United States, or given up to them. It was operated all the time by the officers of the company, as their testimony abundantly shows, the government having no possession of it as a matter of sovereign right—it was only a favored customer.

Another ground of complaint by the appellants is, that they were made responsible for the rejected corn. If the contract was, as we see it was, to deliver the corn at Cairo, and that it should pass government inspection, the loss on the rejected corn could fall nowhere else than on the defendants, and this was their own view as is apparent from their letters on that subject. When, on the 22d of February, 1865, the plaintiffs informed the defendants, by letter of that date, that car No. 2133 from Champaign was rejected, and inquired what they should do with it, defendants replied on the 25th, " do the best

you can with car corn you say is rejected;" and on March 26th, defendants, expressing their surprise that car No. 2028 had been rejected, directed the plaintiffs "to work it off to the best advantage," and on the 14th of April, the defendants wrote plaintiffs, "pray do the best you can with that rejected corn, as there will be an awful loss on it," and, on the 29th of the same month, they by telegram said to plaintiffs, "dispose of the rejected corn to the best advantage you can," and to the same effect were their letters of a prior date, in the same month.

Thus it manifestly appears, that the plaintiffs were the defendants' agents to dispose of the rejected corn; and, if they did so to the best advantage, in their judgment, no fraud being shown, they cannot be charged with it. The account rendered shows they accounted fully for the proceeds of the corn, crediting defendants therewith, the plaintiffs being liable alone for the actual proceeds, no fraud or negligence on their part in the mode and manner of disposing of it being shown.

The evidence, we think, fails to establish defendants' theory of the case, and does show, that the corn was to be delivered at Cairo, and to pass government inspection at that place; and, until it had so passed, it remained the property of the defendants, and was their property after it was rejected; and that the rejected corn was disposed of by the plaintiffs to the best advantage, and the proceeds passed to the credit of the defendants. We do not find there is any pretense for the complaint that the government had engrossed the facilities of the Central railroad as an act of sovereign power, or that any reason is shown why, if government had so done, they did not protect themselves against such an occurrence by their contract, which it was in their power to have done. Nor do we find that was the only channel of communication with Cairo, as the defendants themselves suggested other channels, to which the plaintiffs made no objection, they being content to get the corn by any and every route, open to the defendants, which they might choose.

The defendants also complain of the instructions given for the plaintiffs, and that those they asked were refused.

The defendants asked twenty-two instructions, the first nine of which were given, with some modifications, by the court; the remaining thirteen were refused. The defendants specially complain that the plaintiffs' first instruction was wrong. That was in these words: "If the jury believe, from the evidence, that the defendants made and entered into the contracts set out in the declaration in this case, and that Cairo was the place where the grain was to be delivered, and that it was no part of such contracts that the grain was to be carried by the Illinois Central railroad, and that the plaintiffs were to furnish the transportation for the grain upon that road, then the performance of said contracts, according to their terms, was not excused by the acts, orders or directions of the government of the United States or any of its officers or agents shown in evidence in this case, nor by the difficulty or delay in obtaining cars from the Illinois Central railroad, nor by the delay in moving the cars upon the line of said road, whether such delay was caused either by the want of motive power on said road or by the amount of freight which the said railroad was then carrying for the plaintiffs."

We fail to appreciate any objection urged to this, or to any other instruction given for the plaintiffs. They present the law of the case as we understand it, and are in harmony with adjudged cases too numerous to be cited.

The instructions refused were the tenth to the twenty-second, both inclusive.

We have not time to devote to each of them severally; we can only say, that much of these instructions was embraced in the first nine given for the defendants, and it was no error to refuse to give a second time their substance. Some of these instructions sought to make the case turn on the supposed fact that after the first contract of January, 1865, a new contract had been made between these parties, for the reason that the time of the performance had been changed from the 15th of March to the 1st of April, and from that day to the 15th of April, 1865, and by changing the price of the corn from one dollar and thirty cents to one dollar and twenty-five cents per

56    BACON *et al. v.* COBB *et al.*    [Sept. T.,

Opinion of the Court.

bushel. This extension of the time of performance, the defendants argued, was a new contract, and was not substantially proved as alleged. An examination of the various counts in the declaration, and of the evidence, clearly shows that the original contract, though the time of performance was liberally extended by the plaintiffs, was not performed within the extended time, and the defendants argue, in effect, "Though true it is we made the contract, and you extended the time of its performance, and though we did not comply with the contract as extended, we are absolved from all obligation to comply with the original contract, for that extension was a new contract, and you did not declare upon it in the declaration." In other words, they do not deny they made the contracts, as set out in the declaration, but insist, as further time was given them in which to perform them, which they did not offer to do, the plaintiffs cannot recover on the contract as made.

Numerous authorities might be cited to the point, that, where a party agrees to accept the thing to be delivered at a time or place other than that stipulated, a performance of this by the other party is equivalent to a performance of the original undertaking. It imposes no new duty on the defendant; he merely accepts as performance by the plaintiff that which would not otherwise have been so, and the defendants' liabilities on the original contract remain unchanged. Some of these authorities are cited by the appellees. *McCombs* v. *McKennan*, 2 Watts & Serg. 216; *Cummings* v. *Arnold*, 3 Metc. (Mass.) 486; *Robinson* v. *Batchelder*, 4 N. H. 40; *Richardson* v. *Cooper*, 25 Maine, 450.

The corn, by the original contract, was to be delivered at Cairo by the 15th of March, 1865; and, by correspondence and agreement with the plaintiffs, in view of the difficulties of which the defendants complained, the time of delivery was extended to the first of April, again to the 10th, and then to the last day of April. It would be strange law, indeed, if the defendants were allowed to say that, inasmuch as you gave us further time in which to perform our contracts, and we did not comply, you have no right to an action against us on our

original contract; and this is the burden of many of the instructions, and a large part of the theory of their case. There is no merit in this plea of a new contract, or of variance in the one declared on.

To say nothing of other instructions given for the defendants, the first and fifth given cover the principal points of the case, and all which were given, were as favorable to the defendants as their case entitled them to demand, if not more favorable.

We may say in regard to the twenty-first instruction, there is no evidence whatever on which to base it, and respecting the twenty-second and last refused instruction of the defendants, though it may be true as an abstract proposition of law, there is not a particle of evidence they were prevented from performance by any act of the plaintiffs; on the contrary, the proof shows the plaintiffs furnished them aid whenever called on, to get transportation. It is unreasonable to suppose the plaintiffs would obstruct or delay the delivery of corn at Cairo, on every bushel of which, if it passed inspection, they made a clear profit of twenty-five cents.

On the most careful consideration, we cannot see that appellants' case has any merits. The judgment is affirmed.

*Judgment affirmed.*