THE PEOPLE *ex rel.* The Paris and Danville R. R. Co.

*v.*

## JOHN G. HOLDEN *et al.*

1. MUNICIPAL SUBSCRIPTION—*condition prevented.* Where a township, under warrant of law, voted in favor of a subscription to the capital stock of a railway company, without conditions, the same to be made without unnecessary delay, to be paid for in bonds, not to be delivered until the road was completed and in operation between two points named, within five years, and the road was in fact completed within three years, to its terminus, except about a mile, but, by arrangement with another company, it operated its trains to its terminus, supplying all the wants of the public, when it tendered stock and demanded the subscription to be made, which was refused, and it being admitted by the pleadings that this refusal prevented the completion of the road within the five years, it was *held*, that the township could not be excused from making the subscription and issuing its bonds after the entire completion of the road, even after the time limited, as it could not profit by its own wrong.

2. SAME—*what is a substantial performance of condition.* Where the issuing of corporate bonds to a railway company is dependent upon the

condition that its road shall be completed to a certain city within a given time, a completion of its road to about a mile from the city, and, by an arrangement with another road which it intersects, the running of its trains to the city over the other road, as fully accommodates the public as if its own line had been extended into the city, and will be regarded a substantial compliance with the condition.

3. CONTRACT—*party preventing performance can not take advantage of it.* A party, who prevents a thing being done within the time stipulated, will not be allowed to avail of the non-performance he has himself occasioned, and thus avoid his agreement.

4. SAME—*what is.* A petition for an election by a municipal corporation to take stock in a railway company, and to issue bonds in payment, upon certain conditions, the notice of the election, and an affirmative vote thereupon, upon the faith of which money is expended, and the road substantially built and equipped, is a contract between the corporation and the railway company.

5. DEMURRER—*admits all facts well pleaded.* A demurrer to a pleading is an admission of the truth of all the facts therein well pleaded.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. OLIVER L. DAVIS, Judge, presiding.

Messrs. HENRY & PENWELL, and Messrs. MANN & CALHOUN, for the plaintiffs in error.

Messrs. EVANS & SWALLOW, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

At the February term, 1876, of the Vermilion circuit court, the people of this State, on the relation of the Paris and Danville Railroad Company, a body politic and corporate under a law of this State, presented a petition to the court, praying that a peremptory writ of *mandamus* be awarded against the supervisor and town clerk of the town of Danville, in said county, commanding them to make a subscription of twenty-five thousand dollars to the capital stock of that incorporation, and to issue bonds of that township for that amount, in accordance with the provisions of the act of incorporation and the terms of the vote in that behalf.

. The petition refers to the act of the General Assembly of this State, approved March 26, 1869, incorporating the Paris

and Danville Railroad Company, and sets out the petition to the supervisor of Danville township that an election might be ordered, the notice given of the election, the returns thereof and canvassing the same, by which it appeared a large majority of the votes cast at the election were cast in favor of the subscription.

The petition then avers, on this fact being ascertained, it then and there became the duty of the supervisor and clerk of the township to subscribe, at the request of the company, the sum of twenty-five thousand dollars, the amount so voted, to the capital stock of the company, and to issue and deliver to the company the bonds of the township for that amount, upon the terms and conditions in said petition mentioned. and made due and payable at the time and in the manner in the petition mentioned, upon the tendering by the company to the supervisor and clerk twenty-five thousand dollars of the capital stock of the company, and otherwise complying with the conditions of the vote.

It appears the petition of the voters to the supervisor was to this effect: that the question of subscribing twenty-five thousand dollars to the capital stock of this company should be submitted at an election to be held on the — day of December, 1869; but it further provided for the payment of the subscription in these terms: said subscription to be paid on the following express condition, that is to say, said subscription to be paid by the bonds of said township, payable in fifteen years absolutely, or sooner, at the option of said township, and to bear interest at the rate of seven per centum *per annum*, and said bonds are not to bear date, nor to be delivered, nor to bear interest, until the railroad is completed, equipped with rolling stock and running in successful operation from Paris, in Edgar county, in and to the city of Danville, Vermilion county, Illinois; and upon the further express condition, that no part of said railroad shall be located or built west of the north fork of the Vermilion river, in said city of Danville, and that said railroad should be completed and in successful

operation from Paris to Danville within five years from this date, and dated November 6, 1869.

The election notice issued upon this petition recites the same, filling the blank of the day of the election with the figures 11th; so that the day of election should be the 11th day of December, 1869. The ticket voted contains substantially the same conditions.

The petition alleges that, within five years from the date of the petition for an election, the railroad company, relying upon this vote and subscription, had built and completed the railroad track from Paris, in Edgar county, to a point in Danville township, on the line of the Toledo, Wabash and Western Railway Company, about one mile from the city of Danville, and had made an arrangement with and leased from that company, whereby the petitioners' company had the right to run its cars on the track of the Toledo, Wabash and Western Railway Company, in and to the city of Danville, which was substantially the completion of their railroad from Paris to the city of Danville; and they had their line of road equipped with rolling stock and in successful operation from Paris to Danville, and that they continued, under this arrangement, to operate their railroad until they extended their track. This extension of track is alleged to have been made by the month of September, 1875, and was from the point of intersection with the Toledo, Wabash and Western Railway Company, to a point on the west side of the north fork of the Vermilion river, directly opposite to the west line of the city of Danville, from which point it crossed the north fork into the city, and that no part of their railway was or is located or built west of the north fork of the Vermilion river, in the city of Danville; and averring that the railroad is in full and successful operation over said track as extended, and from Paris to Danville.

It is further alleged, that after the election to subscribe for this stock, and after the company had constructed its road to its intersection with the Toledo, Wabash and Western Railway, and after it was running to Danville under the arrangement

made with the Toledo, Wabash and Western Railway Company, the petitioners caused twenty-five thousand dollars of their capital stock to be duly executed, and, on —— day, tendered the same to the supervisor and town clerk of Danville township, and then and there specially requested the supervisor and town clerk to make the subscription voted, which they refused to do, which refusal greatly embarrassed the petitioners financially, and, by reason of this refusal, the petitioners were hindered and delayed in pushing the road to completion within the five years, from its intersection with the Toledo, Wabash and Western road to its present terminus in the city of Danville, which could readily have been done within the five years, had the township officers discharged their duty at the time requested.

It is further alleged, that within three years from the date of their petition the railroad was completed, equipped with rolling stock and in successful operation from Paris to Danville, by means of the arrangement with the Toledo, Wabash and Western Railway Company, and from that time, thenceforward, they have been able to, and have accommodated the township and city of Danville and the public, in carrying freight and passengers between these cities, as fully and as perfectly as they could have done if the railroad had been completed to its present terminus in the city of Danville, and, therefore, it became the duty of the supervisor and town clerk to make the subscription and issue the bonds of the township, upon the request of the company and the tender of the capital stock to the amount of twenty-five thousand dollars.

And it is further averred, that on the first day of January, 1874, the railroad company caused to be tendered to those officers twenty-five thousand dollars of the capital stock of the railroad company, duly executed, and then and there demanded that the subscription should be made and the bonds issued, but that the supervisor and clerk refused, and ever since have refused, in disregard of the duty imposed upon them by law. They further allege, they have the amount of stock ready, in court, duly executed, to be delivered to the supervisor and clerk, and will keep and maintain the tender in open court.

To the petition containing these allegations there was a demurrer, which was sustained by the court, the petition denied, and judgment rendered against the petitioners for costs. By agreement, the record is taken to the southern division by writ of error.

The demurrer brings before us the whole record, and we must determine, from an inspection of it, whether sufficient facts are pleaded to authorize the writ, for the demurrer admits all the facts well pleaded.

Unlike in other cases of this character, in this there is no question of power, and no rights of third parties intervening.

It will be observed, the law authorizing this election nowhere requires or contemplates there shall be any conditions attached to the vote, nor does the petition of the freeholders contain any, so far as the subscription to the capital stock of the company is concerned. On a majority vote in favor of subscription, the subscription was to be made by the supervisor and town clerk, without unnecessary delay thereafter. upon request of the railroad company. Nor does the notice for the election contain any condition as to the subscription. It is very clear the subscription was to be made, on a favorable vote at the election being returned, and that, too, without unnecessary delay, upon the request of the company.

It is averred in the petition, and admitted by the demurrer, that within three years from the date of the petition requesting an election, the railroad was completed, equipped with rolling stock and in successful operation from Paris to Danville, by means of the arrangement made with the Toledo, Wabash and Western Railway Company, by which all the trade and travel of those cities and of the public were fully accommodated.

This intersection with the Toledo, Wabash and Western Railway Company was at a point not exceeding one mile from the city of Danville, showing the relators were earnestly endeavoring to carry out the enterprise in which they had engaged. At this time, a request was made to the town authorities to make the subscription of twenty-five thousand dollars,

about which there was no condition whatever. This, it seems to us, was the plain duty of the authorities to do. The distance from Paris, in Edgar county, to the city of Danville, is, we understand, about thirty-five miles, with the Vermilion river between. Thirty-four miles of this distance had been occupied by the relators' railroad, and within three years from the time the petition for the election was presented, which was on November 6, 1869. Thirty-four miles out of thirty-five of railroad had been completed, and such arrangements made with a long established road, by a connection with it, as to subserve all the travel and trade of the cities and of the public at large, and was evidence certainly, and strong evidence, of sincerity and good faith on the part of the railroad company.

It is admitted that at this juncture a request was made by the railroad company to the supervisor and town clerk to make the subscription of twenty-five thousand dollars, which they refused to do. Up to this time the resources of the railroad company had been drawn upon to extend the road thus far, and it was pressed for funds to continue the work. Had the town authorities then performed their duty, a new source of supply would have been opened to the company, with which they could have completed the road by a continuous line of their own from Paris to Danville, for it may be admitted, for the purpose of this case, such a line was in contemplation of all the parties, and such an one could have been made with the twenty-five thousand dollars promised by the township of Danville, and a large surplus would be left. We all know, to prosecute vigorously works of this character, prompt payment on the part of stockholders is indispensable, for railroads can not be made without money.

The promise of the township, by the vote, was precedent to the promise of the company to build the road, and had the subscription been made when requested, it can not be doubted the entire road would have been completed in the time stipulated. This subscription by a township so populous and so wealthy as Danville township, one of the most flourishing in

the State, with the richest land and inexhaustible mines of most valuable coal, would have contributed to this struggling railroad company a basis of credit on which money could be raised without difficulty.

It is well known railroads are built, for the most part, with borrowed money, secured by a mortgage of the road and franchise. It can readily be seen how important it was to this company that it had as holders of a part of their capital stock a township so influential and wealthy as Danville, in the county of Vermilion.

Defendants are not entirely correct in saying the subscription and issuing of bonds was conditional. No conditions whatever were attached to the subscription; that was to be made on an affirmative vote of the people, without unnecessary delay, upon request of the railroad company. Such is the language of the act. 3 vol. Private Laws 1869, pp. 147–8.

The conditions applied to the payment of the subscription, and it is urged, the conditions on which the bonds were to issue in payment of the subscription, have not been performed, and that it would be an useless act now to compel a subscription, and by reason of their default the company have forfeited all right to the bonds.

It will be conceded, when a connection was made with the Toledo, Wabash and Western Railway Company, one mile south of the city of Danville, by which the trade and travel of the two cities, Paris and Danville, and the public generally. were fully subserved, there was not, by the railroad company, a literal compliance with one of the conditions on which the bonds were to be issued, if it was in the contemplation of these parties there should be one continuous line of road from Paris to Danville, under the management and control of the Paris and Danville Railroad Company, in its entirety, no part of it to be subject to, or under the control of any other independent authority or corporation. But, as we have said, when the road had been completed to that point, and the town authorities were then requested to make the subscription, they should have done so, as it is admitted, had they so done, the means

could have been procured thereby with which the road could have been and would have been completed by a continuous line to the city of Danville.   And shall the township be permitted to profit by its own wrong in withholding, at this vital moment, the means by which to complete the road precisely as contemplated?

What right has the town of Danville to insist on a literal performance on the part of the company, they refusing to perform on their part?

The vote had by the people was, that a subscription should be made without unreasonable delay, on request of the company.   The town entered into this engagement unconditionally, and is it right they should urge their own disobedience of the law, by which the railroad company was paralyzed in their operations, as an argument against the company?

We are all of opinion the subscription should have been made when requested by the railroad company.   Had it been made at the time requested, the railroad being then completed to a point within one mile of the city of Danville, the common observation of any person must be sufficient to show that the sum to be subscribed would be a basis for raising funds to make the extension within the prescribed time.

Now, as to the bonds.   It is urged by defendants, the railroad company have acquired no right to the bonds, although the road is completed to the city of Danville, fully equipped, and in successful operation, because it was not completed and equipped within five years from the 6th of November, 1869, the day the petition was presented for the election.

It is alleged in the petition as a fact, and the demurrer admits it, that the failure to complete the road within the five years was attributable to the failure to make the subscription upon the request of the railroad company.   What is the recognized rule in such cases, when a precedent condition is to be performed, before liability can attach as against the other party? It is a sound principle, everywhere recognized, that a party who prevents a thing being done at the time stipulated, shall not avail of the non-performance he has himself occasioned.

It was the intention of the voters, when they voted, that their decision should be carried into effect, and the amount of twenty-five thousand dollars subscribed to the capital stock of this company by the township authority, without unreasonable delay, upon request of the railroad company. They knew that railroads could not be constructed without money, and they knew, in order to raise money, the company must have credit. This subscription, ordered by the voters to be made, it is readily seen, would have put the road in funds with which to construct one mile of road, without equipment, as agreed in the contract. We say contract, for we take the charter, the petition, notice of the election, and the vote thereupon, as a contract between these parties.

It is plain, the defendants in error prevented the construction of the road the entire length within the time limited, and they can not take advantage of their own wrong. A suspension of the work, or delay in its progress, after the time when the subscription should have been made, can not be a defense for the township.

But, it is urged, another express condition has not been complied with by the railroad company, and it is this: In the petition for an election, it was stipulated that no part of said railroad shall be located or built west of the south fork of the Vermilion river, in said city of Danville. What is the allegation in this petition for a *mandamus,* and which the demurrer admits? It is this: "By the month of September, 1875, said Paris and Danville Railroad Company had extended its track from said point on the Toledo, Wabash and Western railway to a point on the west side of the north fork of the Vermilion river, directly opposite to the west line of the said city of Danville, from which said point it crossed said north fork of the Vermilion river into the city of Danville, and no part of said railway was or is located or built west of the north fork of the Vermilion river in said city of Danville, and said railroad is now in full and successful operation over said track, as aforesaid, and from Paris to Danville, aforesaid."

Here is a distinct allegation, admitted to be true, that no

part of the railroad is located or built west of the north fork
of the Vermilion river, in the city of Danville. Here there is
no violation of the condition set up and claimed by the defend-
ants, but fully meets the terms of the petition and vote.

But if the route of the road is not in precise accordance with
the intention of the parties, defendants would have no cause
to complain, as a complete line of transit, starting from Paris
and terminating at the city of Danville, accommodating all
the travel and freights, and promoting the same general inter-
ests, exists. The principles recognized in *The Terre Haute
and Alton Railroad Co.* v. *Earp*, 21 Ill. 291, and cases there
cited, are applicable here. See, also, *Banet* v. *Alton and San-
gamon Railroad Co.* 13 Ill. 504; *Sprague* v. *Illinois River
Railroad Co.* 19 ib. 174; *Illinois River Railroad Co.* v.
*Zimmer*, 20 ib. 654.

On a careful examination of this record, we are satisfied the
petition sets forth facts sufficient to authorize the court to issue
the writ of *mandamus*, as prayed. The relators seem to have
exerted themselves to bring their enterprise to a successful
termination within the time limited, and would have done so
had they not been prevented by the refusal of the defendants
to perform their duty.

The road is completed from one terminus in Paris, Edgar
county, to the city of Danville, in the township of Danville,
and is answering all the demands and wants of the public, and
there is no reason or justice in permitting the township to
escape its liabilities. Even if the road had not been completed
within the time, in the absence of any fault on the part of the
defendants, still, it would be received if it was completed and
equipped and in successful operation, as this road is. Such a
plea ought not to avail in a court where justice is supposed to
be administered. The town has obtained all it expected to
obtain, and ought to pay what it agreed to pay. If the de-
fendants, or those they represent, have sustained damages by
the delay, they might be entitled to recover from the company
to the extent of these damages. This would be more in accord-
ance with justice than the demand they set up, that they shall

go "scot free," although the road has been made for them as contemplated.

There are some minor points made by defendants in error, but as the petition did not state a day for the election, they are settled by the case of *Marshall et al.* v. *Silliman et al.* 61 Ill. 218. The notice fixed a time and place for the election, which was a sufficient compliance with the law.

Entertaining these views, the judgment on the demurrer should have been for the petitioners. Sustaining it was error; and for the error, the judgment is reversed and the cause remanded for further proceedings.

*Judgment reversed.*

Mr. JUSTICE WALKER: I am unable to concur in this opinion or the judgment rendered in this case.

Mr. JUSTICE DICKEY: I can not concur in this opinion or judgment.