TEUSCHER et al. v. UTAH-IDAHO FLOUR & GRAIN CO.

No. 3980. Decided December 27, 1923. (221 Pac. 1096.)

1. FRAUDS, STATUTE OF—SUBSTITUTION OF NEW VOID CONTRACT HELD NOT ESTABLISHED. Evidence of negotiations between the parties after a breach of a contract to deliver all of hay contracted for, looking to delivery at a later date, *held* insufficient to establish the substitution of a new contract, void because of failure to comply with the statute.

2. APPEAL AND ERROR—FINDINGS OF TRIAL COURT SUPPORTED BY VIDENCE BINDING ON APPEAL. Findings of the trial court supported by undisputed evidence are binding on appeal.

3. SALES—MEASURE OF DAMAGES FOR FAILURE TO DELIVER HAY STATED. The measure of damages for failure to deliver hay in accordance with a contract is the difference between the contract price and the market price on the date of the breach.

4. SALES—HELD DETERMINABLE AS OF DATE OF REFUSAL TO DELIVER RATHER THAN PRIOR DATE WHEN DELIVERY WAS DUE. Where, after failure of a seller to deliver hay on the date provided for in the contract of sale, negotiations looking to a subsequent delivery were carried on for some time between the parties before an actual refusal of delivery was made, during which time the market price of hay continued to rise, the measure of damages for failure to deliver was the difference between the

contract price and the market price on the date of refusal to deliver rather than on the date on which delivery was first due.

5.  CONTRACTS—INTENT OF PARTIES CONTROLS CONSTRUCTION.   The intent of the parties controls construction of all contracts.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight*, Judge.

Action by J. C. Teuscher and another, doing business as the Intermountain Produce Company, a corporation, against the Utah-Idaho Flour & Grain Company, a corporation. Judgment for plaintiffs, and defendant appeals.

AFFIRMED.

*Wm. E. Rydalch*, of Los Angeles, Cal., for appellant.

*Rawlings & Wallace*, of Salt Lake City, for respondents.

GIDEON, J.

In this action judgment is sought for breach of contract. Plaintiff had judgment, and defendant appeals.   Among other things, the court found:

"That on or about the 6th day of March, 1920, plaintiff and defendant entered into a contract, not in writing, wherein defendant agreed to sell the plaintiff and the plaintiff agreed to purchase from defendant four cars of alfalfa hay, at the agreed price of $27.00 per ton delivered f. o. b. Ogden, shipment to be made of two cars during the week following the date thereof, and two cars a week thereafter, to wit, on the 12th and 25th of March, 1920; that said defendant did deliver to plaintiff two cars of alfalfa hay so sold, but no other; that defendant notified plaintiff of its inability to deliver the other two cars of hay at the time agreed upon, and plaintiff and defendant mutually agreed upon postponement of the delivery of said hay tntil on or about the 23d day of April, 1920, at which time defendant refused to make delivery at Ogden, Weber county, state of Utah."

The court further found that the plaintiff was ready and willing, at all times, to comply with the provisions of the

contract and to pay the amount stipulated for the two car-
loads of hay not delivered. The court also found the amount
of damages sustained by plaintiff. The defendant assails
the findings of the court as not being supported by the evi-
dence and the judgment, as not being supported by the
findings.

There is no dispute as to the making of the contract.
Neither is there any dispute that two carloads of alfalfa hay
were delivered, nor that two carloads were not delivered.
Plaintiff's testimony is that after the delivery of the two
carloads of hay nothing further was said between the parties
until about the 1st or 2d of April following at which time
plaintiff called the manager of the defendant over the tele-
phone and requested delivery of the remaining two cars.
He was informed by the president of the defendant company
that the latter would deliver the hay just as soon as possible,
and the plaintiff assented. At a subsequent date, a week or
ten days later, plaintiff again called the defendant, and a
similar conversation was had. There is some dispute as to
whether there was any further conversation between the
parties until April 23d. At that time plaintiff again called
the defendant by telephone, and was then advised by the
president of the defendant company that the hay would not
be delivered. There was some conversation as to the delivery
of one car, but plaintiff insisted upon the two cars being
delivered, and assigned as a reason for so doing the fact that
his firm had resold the hay and it was necessary to have the
full amount specified in the contract.

It seems to be the contention of counsel for defendant,
appellant here, that the conversations had between the par-
ties after the date of the breach, to wit, March 25th, consti-
tuted a new contract, and the same being oral was within
the statute of frauds and not enforceable. Numerous au-
thorities are cited by counsel tending to support the con-
tention that a new contract entered into for the purpose of
superseding an existing contract is subject to all of the re-
quirements of an original contract; that is, there must be
a consideration, and if the nature of the contract brings it

within the statute of frauds it must be in writing.  In
answer to that argument it is sufficient to say that      1, 2
there is no evidence, on the part of either the plaintiff
or defendant, that the parties contemplated entering into or
making a new contract.  Whatever negotiations were had
after April 1st related to the former contract, and were
efforts to have that contract fulfilled.  There is some dispute
as to what was said by the parties in these several conversa-
tions and a denial on the part of the defendant that such
conversations were had.  The court's findings are supported
by the plaintiff's testimony, and those findings being upon
disputed testimony are binding upon this court.

The measure of damages under the facts in this case is the
difference between the contract price and the market price
at the date of the breach.  The testimony is to the
effect that there was a gradual increase in the market      3
value of alfalfa at Ogden front April 1st to April
23d.  At the latter date the market value was $40 per ton.
The controlling legal question to be determined under the
findings made by the court is:  Should the damages be de-
termined as of March 25th or as of April 23d?

Conceding that there was a breach on March 25th, neither
party considered that the contract was terminated on that
date.  It was within the power of the plaintiff at that time
to consider the contract broken and sue for damages as of
that date.  It was within the power of the defendant, either
at that time or at any time prior to April 23d to notify
plaintiff of its inability to perform, and thereby fix the date
on which the damages should be assessed.  Neither party
saw fit to consider the contract as terminated.  The defend-
ant by its contract and its promises, led the plaintiff to
believe that it would fulfill the contract and deliver the hay
under the agreement of March 6th.  It would be most in-
equitable, under that state of facts, to deny the plaintiff any
damages sustained by reason of the acts and conduct
of the defendant in leading plaintiff to believe that      4, 5
the defendant's contract would be fulfilled.  To hold
that the acts of the parties created a new contract would

do violence to the fundamental rule of construction of all contracts that the intent of the parties shall control.

The facts in this case are similar to the facts in the case of *Ralli* v. *Rockmore*, (C. C.) 111 Fed. 874. In that case the defendant, in the months of October, November, and December, sold certain bales of cotton to plaintiff to be delivered during those months. Plaintiff urged delivery and not until January 4th following did the defendant definitely refuse to make delivery. In an action for breach of the contract, held that the damages should be assessed and determined as of January 4th.

The language of Blackburn, J., found in *Ogle* v. *Vane* (1867) L. R. 2 Q. B. 275, is appropriate here, and answers much of the contention made by counsel for appellant. That language is as follows:

"In the present case there were three contracts in writing, which may be treated as substantially one, that the five hundred tons of iron should be delivered by the end of July. None of it was delivered at that time; and the plaintiff, as he alleges at the request of the defendant, waited till February, when he lost all patience and went into the market, and 'brought this action; and the damages were assessed at the market price in February, which was much higher than at the end of July. The argument of the defendant's counsel was that, inasmuch as the contract was broken at the end of July, the damages were fixed at the time of the breach, and nothing could alter the amount of damages, except something which would constitute a new contract, and that this new contract, not being in writing, would be void under the statute of frauds. I do not think that is the proper view of the present case. There is no evidence to show that the plaintiff ever bound himself to wait for a later delivery, or that he ever made a fresh contract. The plaintiff, instead of insisting on his strict rights, consented to treat the defendant leniently, and said, 'I'll wait, but I do not bind myself to wait.' Here there was no substitution of one contract for another. The inference which I think the jury might well draw as the result of the evidence is that the parties did no more than this: The plaintiff was willing to wait, at the request of the defendant, for the defendant's convenience, and he did wait a long time, till February; but if he had lost patience sooner, and refused to wait any longer, he would have had a right to bring his action at once for the breach in July. It is clearly a case of voluntary waiting, and not of alteration in the contract."

"The proposition that one party to a contract should thus dis-

charge himself from his own obligations by inducing the other party to give him time for their performance, is, to say the least, very startling, and if well founded will enable the defendants in this case to make use of the statute of frauds, not to prevent a fraud upon themselves, but to commit a fraud upon the plaintiff. It need hardly be said that there must be some very plain enactment or strong authority to force the court to countenance such a doctrine." 10 L. R. Com. Pl. Cases (1874-75) p. 603.

"It was in the power of the defendants, instead of merely postponing the execution of the contract from time to time, to have absolutely refused to perform it, if they found that the price of iron was rising in the market, as is alleged in argument." *Roberts* v. *Benjamin*, 124 U. S. 73, 8 Sup. Ct. 396, 31 L. Ed. 334.

See, also, *Brown* v. *Sharkey & Ross*, 93 Iowa, 157, 61 N. W. 364; *Bacon* v. *Cobb*, 45 Ill. 47.

There are many other assignments of error relating to the admission of certain testimony over defendant's objections. The same are without merit.

We find no reversible error in the record. The judgment of the lower court is therefore affirmed, with costs.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.