CHICAGO—FIRST DISTRICT—APRIL, 1924.    523

Norton Iron Works v. Wilson Steel Products Co., 232 Ill. App. 523.

# Norton Iron Works, Appellee, v. Wilson Steel Products Company, Appellant.

## Gen. No. 28,812.

1. SALES—*new contract or waiver by suspension of deliveries by agreement*. Where the seller under a contract for the manufacture and sale of steel rods suspended deliveries until further notice solely at the purchaser's request at a time when deliveries were being made according to the contract and the seller was fully prepared to complete such deliveries within the time limited by the contract, the seller's acquiescence in the purchaser's requests for further time to take delivery of the remainder of the rods did not constitute a new contract but was merely a waiver at the purchaser's request of the provision of the contract as to the time for completion of delivery.

2. SALES—*waiver of time without affecting contract*. A waiver of the time fixed for delivery under a contract of sale may be made without any new consideration and without affecting the liability of the parties as to the remainder of the contract.

3. SALES—*pleading waiver in action by seller*. In an action by the seller for breach of a contract to purchase merchandise it cannot be held that a waiver of the time for completion of delivery was not pleaded, when the statement of claim as amended sets out the facts constituting such waiver.

4. SALES—*suspension at request as estoppel*. Where plaintiff in an action for breach of a contract of sale suspended performance of the contract until after the time originally fixed for its completion, in compliance with defendant's request to do so, defendant is estopped from taking advantage of plaintiff's failure to perform within the time first agreed upon.

5. SALES—*waiver and extension of time for delivery*. When the time fixed for delivery under a contract of sale has been waived by mutual consent the time for performance is extended to a reasonable time; what constitutes such reasonable time depending on the facts of each case.

6. SALES—*notice to seller of refusal to accept*. Where shipments under a contract of sale had been suspended at the request of the purchaser and nearly a month after the date fixed by the contract for final delivery the purchaser wrote that conditions made it necessary to ask the seller to make no further shipments and expressed apprehension that the request might cause a rupture in the business relations of the parties, the letter was notice that

the purchaser did not intend to accept any further shipments so that the seller could not legally refuse to comply with the request and there was a definite breach of the contract as of that time.

7. SALES—*tender by seller, sufficiency of.* A letter in which the seller under a contract for the sale of steel rods requested permission to "resume shipments," it being then ready and willing to make delivery, constituted a sufficient tender of performance under section 51 of the Uniform Sales Act, Cahill's Ill. St. ch. 121a, ¶ 54.

8. SALES—*tender by seller of bulky goods.* If the seller of bulky goods has the goods ready to be delivered and offers to deliver them there is a sufficient tender.

9. APPEAL AND ERROR—*review—unneccessary questions.* It is not necessary to decide whether it was error to admit the testimony of a certain witness as to the market prices of goods involved in a breach of a contract of sale when it sufficiently appears from the testimony of witnesses whose testimony is not attacked what the market prices were on the date of the breach and before and after that date.

10. DAMAGES—*interest as element on breach of sale.* Interest was properly allowed in awarding damages for breach of a contract of sale where the contract was in writing and the damages were ascertainable by computation of the difference between the contract price and the market price on the date the breach occurred.

11. HARMLESS ERRORS—*wrong reasons for correct decision.* The reasons given by a trial court for its decision are immaterial on appeal if the decision is correct.

Appeal by defendant from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1923. Affirmed. Opinion filed April 3, 1924.

CLIFFORD G. ROE and WILLIAM R. BROWN, for appellant.

BAKER, HOLDER & SCHMIDT, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This appeal brings up for review a judgment awarding damages against the defendant for breach of contract in refusing to accept and pay for certain steel rods purchased from the plaintiff.

The contract is evidenced by four letters written in May, 1920, in which the plaintiff agreed to sell, and the defendant agreed to buy, 2,000 tons of Bessemer steel wire rods at the price of $83 a ton f.o.b. plaintiff's mill at Ashland, Kentucky, shipments to be made at the rate of 500 tons monthly during July, August, September and October, of 1920. Under this contract, the plaintiff shipped, and defendant received and paid for, 1,368.84 tons. Further shipments were then suspended at the request of defendant, who wired the plaintiff, on August 24, 1920, to "kindly hold up shipment of rods until further notice," on account of "labor trouble," and sent a letter to the same effect on the same day, saying it expected "the trouble to be cleared up with very little delay." On receipt of this telegram and letter, plaintiff set apart in its mill the remaining 631.16 tons of rods, awaiting "further notice" from defendant to resume shipments. Not hearing from defendant for six weeks thereafter, the plaintiff, on October 7, 1920, wrote to the defendant, reminding it of its telegraphic request of August 24, and saying: "We are writing to ask whether we may resume shipments of rods on your contract with us." To this defendant replied, on October 9, 1920: "We * * * regret very much that manufacturing conditions will not *yet* permit us to take on additional shipments. We are in very bad shape and do not see any immediate relief. However, we are working hard to clean up the situation, and as soon as we do, we will take it up with you."

Five weeks more elapsed without communication between the parties, during which period the time specified in the contract for the final shipment of rods expired. On November 17, 1920, the attorney for the plaintiff wrote to the defendant, stating that in compliance with defendant's telegram of August 24, plaintiff had waited until October 7, when it had requested permission to continue shipments and defendant had

declined to give such permission, and asking "what you propose to do about this contract." Defendant replied to the attorney, November 24, 1920, that it had "been unable to take this material in, as manufacturing conditions are entirely against us," which conditions, and the poor condition of plaintiff's rods, "made it necessary for us to request them to make no further shipments;" concluding with the statement that defendant "had always tried to work with" the plaintiff "in times gone by, and so far as we are concerned, we see no reason why our present relations should not continue." At that time, the market price of such rods was $75 a ton and was declining at the rate per ton of five dollars a month.

On January 4, 1921, plaintiff's attorney again wrote to defendant, saying: "We wrote you on November 17, to which you replied *in a noncommittal letter*. We want to know definitely now where we are. * * * We should like to know why we are not receiving shipping instructions." This letter does not appear to have been answered. On January 5, 1921, defendant wrote to the plaintiff, saying: "We are getting to a point where we will probably want *an additional tonnage* in the near future. In view of the present conditions, *we are wondering if you have reduced your prices.*" (This letter does not refer to the letter written the day before to defendant by plaintiff's attorney, and it seems probable that these letters crossed in the mail.) On January 7, 1921, plaintiff wrote to defendant: "We do not understand your letter of January 5th. We are still awaiting your instructions to complete shipments on your present contract." Defendant's reply to this letter, on January 20, 1921, was: "We regret that general conditions make it impossible for us to take in any rods *at a premium*. We are going to need a small tonnage in the near future, and if you can offer a proposition equivalent to those generally quoted, we would be very glad to see that

you are favored.'' Plaintiff retorted by asking if it was to understand from this letter that defendant did not intend ''to take the balance of rods due on your contract.'' To this inquiry, defendant replied, on January 31, 1921, that as the contract required deliveries to be made from July to October, *''the contract in question has long since expired,* and we cannot see our way at this time to *reinstate* this order''; adding that defendant would be glad to give plaintiff an order for rods ''as soon as business reopens, so that we are in a position to handle goods and meet invoices when due.'' Thereupon plaintiff brought this suit.

The statement of claim, as amended, sets out *in hæc verba* all the letters above mentioned, alleges that plaintiff manufactured the quantity and kind of rods therein specified, and appropriated the same to the contract, and was at all times ready, willing and able to deliver the same to defendant, and requested defendant to accept and pay for the same; but that defendant without cause refused to accept or pay for, or take delivery of, the last 631.16 tons of such rods. In defendant's affidavit of merits the making of the contract, and the delivery of 1,368.84 tons of rods, are not denied. The other averments of the statement of claim are denied.

Upon the trial, which was without a jury, plaintiff introduced the correspondence above mentioned, and evidence tending to prove that plaintiff manufactured the 2,000 tons of steel rods mentioned in the contract, and was ready, willing and able at all times to deliver the same to the defendant; also evidence tending to prove that the market price of such rods was $70 a ton on November 1, 1920, $67.50 on November 24, 1920, and $57 on January 31, 1921. Defendant offered no evidence. The trial court found that defendant's letter of November 24, 1920, definitely indicated an intention on its part not to proceed further under the contract, and awarded to plaintiff as damages for such

breach the difference between the contract price of the undelivered rods and the market price of the same at that time.

Defendant's counsel take the position that the contract entered into in May, 1920, expired by its own terms on the last day therein prescribed for the delivery of the steel rods, viz., on October 31, 1920, and that the letter of August 24, 1920, requesting plaintiff to hold its shipments until further notice, and the letters of October 7 and 9, 1920, did not keep the contract alive by extending the time for delivery, for the reason, it is said, that to so hold would be to give effect to a new contract, different from the one declared on, for which there was no consideration. We cannot assent to this view. All the letters were set out in full in the statement of claim. It is clear from such letters and the oral testimony that plaintiff suspended its deliveries "until further notice" solely at defendant's request, at a time when plaintiff was making its deliveries according to the terms of the contract and was fully prepared to complete such deliveries within the time limited by the contract. Under such circumstances, plaintiff's acquiescence in defendant's requests for further time to take delivery of the remainder of the rods did not make a new contract. It was merely a waiver by the plaintiff, at defendant's request, of that provision of the contract requiring the last deliveries to be made in September and October, the contract in all other respects remaining as written. (*Bacon v. Cobb,* 45 Ill. 47; Mechem on Sales, § 1151.) That such a waiver may be made without any new consideration and without affecting the liability of the parties as to the remainder of the contract, has often been held. (*Baker v. Whiteside,* 1 Ill. [Breese] 174; *North v. Kizer,* 72 Ill. 172; *Anderson v. Moore,* 145 Ill. 61; *Bacon v. Cobb, supra; Wichert v. Stafford,* 25 Ill. App. 218, 220.) It cannot be held that such waiver is not pleaded, because the statement of claim as amended, sets out the facts constituting such waiver. More-

over, since the plaintiff suspended the performance of the contract until after the time originally fixed for the completion thereof in compliance with defendant's request to do so, defendant is estopped from taking advantage of plaintiff's failure to perform within the time first agreed on. (*Longfellow v. Moore,* 102 Ill. 289; *Hirsch Rolling Mill Co. v. Milwaukee & F. R. V. R. Co.,* 165 Wis. 220; *Neola Elevator Co. v. Kruckman,* 185 Ia. 1254, 171 N. W. 743.) The same principle has been otherwise expressed as follows: "It is a sound principle, everywhere recognized, that a party who prevents a thing being done at the time stipulated, shall not avail of the non-performance he has himself occasioned." (*People ex rel. v. Holden,* 82 Ill. 93, 101; *Lehmann v. Webster & Co.,* 209 Ill. 264; *Louisville, N. A. & C. Ry. Co. v. Diamond State Iron Co.,* 126 Ill. 294, 300; *Baker v. Whiteside, supra.*)

The foregoing authorities also dispose of the further argument of defendant's counsel that if any liability arose after October 31, 1920, it must have been because of some new or modified contract. There was no new contract in the sense contended for by defendant's counsel. It was the same contract, notwithstanding the fact that the time therein specified for the delivery of the undelivered rods, had been waived by mutual consent. (*Bacon v. Cobb, supra.*) In such cases, the time for performance is enlarged from the time fixed to a reasonable time to perform the contract (*Wichert v. Stafford, supra,*); and what is a reasonable time depends on the facts of each case. The trial court held that in this case, such a reasonable time had elapsed when the letter of November 24, 1920 was written, and we agree with that conclusion. That letter was notice to the plaintiff that defendant did not intend to accept any further shipments under the contract. Not only does the letter state that "conditions made it necessary" to ask plaintiff "to make no further shipments," but the concluding paragraph shows that defendant was apprehensive that this request

might cause a rupture in their business relations. As the time originally fixed had then expired, as well as a reasonable time after the letters of August 24th and October 7th were written, plaintiff could not legally refuse to comply with this request; and therefore, this was a definite breach of the contract.

It is further claimed by defendant's counsel that after plaintiff acquiesced in defendant's request to withhold shipments until further notice, (although no such further notice was ever given by defendant) plaintiff could not recover without proving a tender of performance on its part; and it is said that no such tender was shown. In making this contention, counsel cite and rely on section 51 of the Uniform Sales Act [Cahill's Ill. St., ch. 121a, ¶ 54], which provides that "When the seller is ready and willing to deliver the goods, *and requests the buyer to take delivery,* and the buyer does not within a reasonable time *after such request* take delivery of the goods, he is liable to the seller for any loss occasioned by his neglect or refusal to take delivery." If it be conceded that a tender of any kind was necessary under the facts of this case (which we do not decide), we think such a tender as this section of the statute requires was shown. The letter of October 7, 1920, in which the plaintiff requested permission of the defendant to "resume shipments" was, in effect, a request on the buyer "to take delivery"; and the plaintiff was then "ready and willing to deliver the goods." This is all the statute requires. Even before the Uniform Sales Act was passed, the law did not require a seller to carry around with him such a bulky commodity as 630 tons of steel rods in order to physically tender the same to a purchaser. If the seller had the goods ready to be delivered and offered to deliver them, that was a sufficient tender. (*Sanborn v. Benedict,* 78 Ill. 309, 313.)

It is further contended that the court erred in admitting the testimony of the witness Adams, as to the

market prices of rods at different times. The witness stated that he based his evidence as to market prices upon quotations contained in a publication known as the "Iron Age," which, he said, is considered an authority as to such prices, and is generally accepted as such in the iron business. We do not find it necessary in this case to decide whether it was error to admit the testimony of Adams as to such market prices, for the reason that it sufficiently appears, we think, from the testimony of other witnesses, whose testimony is not attacked, what the market price was on November 24, 1920, and what the market prices were before and after that date.

It is also contended that the court erred in allowing interest. We think there was no error in this regard. The contract was in writing and the damages were ascertainable by computation of the difference between the contract price and the market price on November 24, 1920. Interest is properly allowed in such cases. (*Murray v. Doud & Co.*, 167 Ill. 368, 375; *Laughlin v. Hopkinson*, 292 Ill. 80, 86.)

Other contentions, more or less involved with those we have already discussed, are made by defendant's counsel. We have considered all of them, and the authorities cited in support thereof, and think none of them is sufficient to require or justify a reversal of the judgment. It is immaterial, on this appeal, what reasons the trial court gave for its decision, provided the decision was correct, and we think it was.

As to the cross errors assigned, the views we have expressed indicate that we think they are not well taken. The time for the completion of the contract having arrived when the letter of November 24, 1920 was written, that date must be taken as the time of the breach of the contract, in computing the damages.

For the reasons indicated, the judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.