LOUIS BRADFORD v. GRACE E. HIGGINS ET AL.

[FILED JANUARY 20, 1891.]

The finding complained of and the evidence upon which the same was made, examined and *held*, that there was no error in the finding.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*Congdon, Clarkson & Hunt,* for plaintiff in error, cited: *McCormick v. Lawton,* 3 Neb., 449; *Wheaton v. Trimble,* 145 Mass., 345; *Schwartz v. Saunders,* 46 Ill., 18; *Anderson v. Armstead,* 69 Id., 453; *Collins v. Megraw,* 47 Mo., 495; *Jones v. Pothast,* 72 Ind., 158; *Bartow's App.,* 55 Pa. St., 386; *Lauer v. Bandow,* 43 Wis., 556; *Wright*

*v. Hood,* 49 Id., 235; *Heath v. Solles,* 40 N. W. Rep., 804; *North v. LaFlesh,* 41 Id., 633; *Smith v. Gill,* 37 Minn., 455; *Bethell v. Bethell,* 17 Pac. Rep., 813.

*Ritchie & Kaempfer, contra,* cited, on the question of implied agency: *Redman v. Williams,* 2 Ia., 490; *Heath v. Solles,* 40 N. W. Rep., 805; *Willard v. Magoon,* 30 Mich., 279; *Lauer v. Bandow,* 43 Wis., 556; *Weston v. McMillan,* 42 Id., 567; *Starke v. Cheeseman,* 1 Ld. Raymond [Eng.], 538; *Wheeler v. Hall,* 41 Wis., 447; *Davis v. Sch. Dist.,* 24 Me., 340; *Wells v. Banister,* 4 Mass., 514; *Spaun v. Mercer,* 8 Neb., 357; *Davis v. Bank,* 5 Id., 246; *Wendt v. Martin,* 89 Ill., 139; *Gilman v. Disbrow,* 45 Conn., 563; *Flannery v. Rohrmayer,* 46 Id., 558; *Price v. Seydell,* 46 Ia., 696; *Nelson v. Cover,* 47 Id., 250; *McLaren v. Hall,* 26 Id., 297; *Wright v. Hood,* 49 Wis., 235; *Holmes v. Bronson,* 6 N. W. Rep., 5; *Getty v. Framel,* 25 Id., 245; *Doolittle v. Goodrich,* 13 Neb., 297; *Scales v. Paine,* Id., 521; *Jones v. Walker,* 63 N. Y., 612; *Bliss v. Patten,* 5 R. I., 576; *Fetter v. Wilson,* 12 Ky., 90; *Hughes v. Peters,* 1 Coldw. [Tenn.], 66.

COBB, CH. J.

On February 4, 1888, the plaintiff in error filed his petition in the court below, alleging that on July 27, 1887, he entered into an oral contract with the defendant Grace E. Higgins, through her husband and agent, Charles S. Higgins, to furnish and deliver on lot 6 of block 197, of Omaha, certain lumber and materials for the erection of a barn and improvements on said lot.

2. In pursuance of which, between July 27 and December 10 following, he furnished and delivered on said lot, owned in fee by said Grace E. Higgins, lumber and materials to the amount of $2,002.95.

3. The defendant Charles S. Higgins is the husband of Grace E. Higgins.

13

4. On January 13, 1888, within four months from the delivery of said lumber and material, the plaintiff made an account in writing of the same, under oath, and filed the same in the office of register of deeds of Douglas county, claiming a mechanic's lien therefor on said lot and the buildings and improvements thereon.

5. That the sum of $2,002.95, with interest from December 10 last, is due and unpaid on said account.

6. That the original lien as recorded in the office of the register of deeds is hereto attached, marked Exhibit A.

That the following liens attach to said premises:

| No. | Creditor's Lien. | Quality. | Date. | | Amount. | |
|---|---|---|---|---|---|---|
| 7 | J. W. Squire, trustee.. ................... | Mortgage........ | June | 4, 1887 | $10,000 | 00 |
| 8 | J. W. and E. L. Squire................... | Mortgage........ | June | 4, 1887 | 750 | 00 |
| 9 | J. J. Johnson & Co...................... | Mechanic's..... | Oct. | 8, 1887 | 173 | 20 |
| 10 | John Svacina.............................. | Mechanic's..... | Nov. | 19, 1887 | 742 | 85 |
| 11 | John Thompson........................... | Mechanic's..... | Nov. | 26, 1887 | 2,047 | 50 |
| 12 | Geo. W. Rogers........................... | Mechanic's..... | Nov. | 29, 1887 | 217 | 50 |
| 13 | Paxton & Vierling Iron Works... | Mechanic's..... | Dec. | 10, 1887 | 146 | 50 |
| 14 | Omaha Paving Co......................... | Mechanic's..... | Dec. | 28, 1887 | 170 | 80 |
| 15 | Andrew Moyer............................. | Mechanic's..... | Dec. | 29, 1887 | 49 | 23 |
| 16 | John Rowe & Co........................... | Mechanic's..... | Dec. | 30. 1887 | 161 | 53 |
| 17 | Schall & Refregier....................... | Mechanic's..... | Jan. | 10, 1888 | 432 | 00 |
| 18 | Barbed Wire & Iron Works......... | Mechanic's..... | Jan. | 11, 1888 | 171 | 43 |
| 19 | James S. Carter........................... | Mortgage........ | Jan. | 6, 1888 | 12,000 | 00 |

The plaintiff prays judgment against the defendant Grace E. Higgins for the amount of his lien with interest and costs, and that the liens against her said premises be marshalled, and that the plaintiff's be declared a lien subject only to the mortgages of J. W. Squire, as trustee, and J. W. and E. L. Squire; that the premises be sold and the proceeds applied to the payment of plaintiff's judgment.

Exhibit "A" is a copy of the plaintiff's statement of lumber and material furnished Grace E. Higgins, under verbal contract through Charles S. Higgins, from July 27 to October 10, 1887, on lot 6, block 197, Omaha, to be used in the construction of a barn and improvements thereon, amounting to $2,002.95, all of which was so used, and the amount stated, with interest from the latter date, is due; that he took from Charles S. Higgins, for a por-

tion of the lumber and materials, three notes aggregating $1,500, taken on the dates of the same, except that of November 16, 1887, due in sixty days, for $500, is a renewal of a similar note due at that date, none of which were paid, and that, therefore, there is due the sum of $2,002.95, with. interest.     Statement under oath, January 11, 1888: First note, $500, dated November 28, 1887, due in forty days, with interest at ten per cent; second, $500, dated November 28, 1887, due in eighty days, with interest at ten per cent; third, $500, dated November 16, 1887, due in sixty days, with interest at ten per cent.

The defendant Grace E. Higgins answered, denying each and every allegation in the petition contained charging an indebtedness or personal liability on her part to the plaintiff, and denying that the plaintiff furnished to her any material or lumber for the erection or improvement of any barn or other building, between July 27 and December 10, 1887, or at any other time, or for any amount; but admitting that on July 27, 1887, she was the owner in fee of said lot, and that Charles S. Higgins is her husband. She admits the mortgage liens set forth, and denies the mechanics' liens in the petition charged against her said premises, and sets up that her husband, C. S. Higgins, is indebted in various sums to different parties on account of materials and labor furnished in the erection of a barn on said lot, but has no information as to the amounts thereof, and alleges that the same are the personal, individual, and separate indebtedness of her husband, and that any material and labor furnished for the erection of said barn and improvement were furnished wholly on his personal credit and not otherwise.

The defendant Charles S. Higgins answered, denying that his co-defendant, Grace E. Higgins, his wife, either through himself, as her agent, or otherwise in any manner contracted, or on any account, with the plaintiff, to furnish lumber or materials for said lot in the city of Omaha, on

July 27, 1887, or at any other time; and denying every allegation in the petition charging indebtedness on the part of Grace E. Higgins to the plaintiff or to other co-defendants, but admitting that on his own personal account, through his agent, George Waddell, he did purchase materials and lumber of the plaintiff in a sum exceeding $1,500, but as to the exact sum he has no knowledge; that he gave his personal notes, aggregating the sum of $1,500, as stated in the Exhibit A to the petition, and that the note of November 16, 1887, due in sixty days, is a renewal note, as stated in said exhibit, and are true copies. He denies that the lumber and material were delivered on said lot, admits that Grace E. Higgins was the owner in fee, and alleges that the plaintiff extended credit to him for all materials and lumber sold for said lot, and that any indebtedness therefor is the personal and individual indebtedness of himself, and not of his wife. He denies the allegations of the 4th, 5th, and 6th counts of the petition ; admits the 7th and 8th, and denies all others except the 19th; or, in effect, he admits the mortgages and denies the mechanics' liens as stated in the petition.

On January 9, 1889, there was a trial to the court in which the following entry was made:

"In this cause, the action of the United States National Bank of Omaha against Grace E. Higgins and others, having heretofore been consolidated herewith, came on to be heard upon the petition of Louis Bradford, the separate answers and cross-petitions of the defendants, Grace E. and Charles S. Higgins, J. W. Squire, trustee, J. W. & E. L. Squire, J. J. Johnson & Co., John Svacina, United States National Bank, George W. Rogers, Paxton & Vierling Iron Works, Omaha Paving Company, John Rowe & Co., Andrew Moyer, Schall & Refregier, Barbed Wire & Iron Works, Charles S. Carter, Himebaugh & Taylor, I. & I. Hodgson, A. L. Strang & Co., and Fred. W. Gray, the replies of the plaintiff and the defendants, and

the evidence, and a jury being waived, except as to the issues between Gray and Grace E. and Charles S. Higgins, was submitted to the court, and the court finds:

"I. That Grace E. Higgins has been at all times referred to the owner in fee of the real estate and premises mentioned and described, lot 6, block 197, in Omaha.

"II. That in the erection of the barn and improvements of said lot, Charles S. Higgins was not the agent of his wife, and none of the materials or labor mentioned were furnished to or for her.

"III. That on June 4, 1887, Grace E. and Charles S. Higgins executed for borrowed money the note for $10,000, and the mortgage upon the lot as set up in the answer of J. W. Squire, trustee; that Grace E. Higgins borrowed the said sum from J. W. Squire, trustee, for the purpose of paying off an incumbrance and to erect a barn upon the lot; that on said date said Squire entered into an arrangement with Grace E. Higgins to pay her on said date $5,000 of the loan, and the remainder when the barn should be completed and paid for; that Squire has paid her of the loan $6,-335.60, and there is now in the hands of Squire, as trustee of said loan, $3,664.40, and his mortgage is the first lien on said lot.

"IV. That on June 4, 1887, Grace E. and Charles S. Higgins executed to J. W. & E. L. Squire the note for $750 and the mortgage on the lot securing the same, which is the second lien on said lot.

"V. That the plaintiff furnished lumber and materials which were used in the construction of the barn, and on January 13, 1888, within four months from the time of furnishing the last article of materials, made an account in writing, as set forth, and after making oath thereto, filed the same in the register's office of Douglas county, and it is duly recorded therein, but the same is not a lien upon said premises; that the plaintiff's claim which is not paid is in the sum of $2,002.95 with interest from January 1, 1888, and costs $2, total, $2,102.97.

*Claims Found Due, but not Liens on the Premises.*

| | | | | |
|---|---|---|---|---|
| 1 | Andrew Moyer | For labor | Dec. 30, 1887 | $52 93 |
| 2 | Schall & Refregier | For material | Jan. 6, 1888 | 452 25 |
| 3 | J. J. Johnson & Co | For labor | Oct. 1, 1887 | 185 80 |
| 4 | Himebaugh & Taylor | For labor | Jan. 1, 1888 | 374 60 |
| 5 | Barbed Wire and Iron Works | For material | Nov. 5, 1887 | 183 65 |
| 6 | Thompson & Delaney | For material | Nov. 26, 1887 | 1,979 60 |
| 7 | George W. Rogers | For material | Nov. 1, 1887 | 237 60 |
| 8 | Paxton & Vierling I. Works | For iron | Sept. 1, 1887 | 157 50 |
| 9 | John Rowe & Co | For material | Dec. 1, 1887 | 170 60 |
| 10 | Omaha Paving Co | For material | Dec. 1, 1887 | 191 70 |
| 11 | I. & I. Hodgson | For architects | Jan. 1, 1888 | 544 95 |
| 12 | George Waddell | For labor and material | Dec. 21, 1887 | 958 45 |
| 13 | A. L. Strang & Co | For elevator | Oct. 1, 1887 | 454 50 |

"The claim of John Svacina as the subcontractor with Thompson & Delaney, for brick furnished the barn on said lot, was presented and registered on November 19, 1887, more than sixty days from the time of furnishing the material, and is therefore disallowed.

"All other defendants above stated have each a *pro rata* equitable lien upon the money of Grace E. Higgins now in the hands of J. W. Squire as trustee.

"On January 6, 1888, after the performance of all work and the furnishing of all materials above mentioned, Grace E. Higgins made and delivered the note for $12,000, and with Charles S. Higgins made and delivered the mortgage securing the note on said lot to James S. Carter, as set up in his answer, and which is the third lien on said lot.

"It was therefore ordered and adjudged that J. W. Squire as trustee, forthwith turn over to the clerk of the court the money of the defendant Grace E. Higgins in his hands, amounting to $3,664.40, and after paying the costs of this suit, the clerk shall pay said money *pro rata* to the plaintiff and to the defendants as above stated. To all of which findings and the decree of the court the plaintiff and the defendants excepted on the record and appealed the cause to this court."

On October 16, 1889, the motion of Grace E. Higgins *et al.*, to dismiss the appeal was heard, considered, and sustained, with leave to the plaintiff to file his petition in

error, which was filed on October 22 following, assigning as error that the judgment is not sustained by the evidence and is contrary to law, and the cause was submitted to the court.    On October 13, 1890, the plaintiff in error moved to set aside the order of submission and remand the cause to the court below for judgment, which last motion, with the issues of the record, was submitted to the court.

Upon the submission of this case I examined it and was of the opinion that the record contained no judgment adverse to the appellant upon which an appeal or proceeding in error would lie, and it was upon an intimation from the bench to that effect that the motion to vacate the order of submission, that the cause might be remanded to the district court for final decree as to the rights of the appellant, was made.    Upon the argument of the motion the majority of the court was of the opinion that the record was sufficient to present all the points arising in the case, and that the motion to vacate the order of submission should be denied.

The error assigned raises the question whether the district court did not err in its fifth finding of fact, that the plaintiff's claim for building material used in the construction of the barn "was not a lien upon said premises."

The first section of chapter 54, Comp. Stats., as to mechanics' and laborers' liens provides that "Any person who shall perform any labor or furnish any material or machinery or fixtures for the erection, reparation, or removal of any house, mill, manufactory, or building or appurtenance, by virtue of a contract or agreement, expressed or implied, with the owner thereof, or his agent, shall have a lien to secure the payment of the same upon such house, mill, manufactory, building, or appurtenance, and the lot of land upon which the same shall stand."

It is not denied that the plaintiff furnished building material of the value of $2,002.95, which was used in the erection of the barn upon the lot of land upon which he

seeks to establish a lien, nor that he furnished the same by virtue of a contract, but it is denied that such contract was with the owner of such building, or her agent.

The substance of the evidence on the part of the plaintiff is, that one Waddell had the contract with C. S. Higgins for the erection of the barn, and C. S. Higgins told the plaintiff to let Mr. Waddell have the lumber for its erection, and he did so, charging the same to C. S. Higgins; that C. S. Higgins was, at the time, also engaged in the erection of a restaurant building on Douglas street (Omaha), and told plaintiff to keep the items of account for lumber furnished for the barn, and that furnished for the restaurant building, separate, so that he could settle with Mr. Waddell; that plaintiff did not ascertain, at the time, the number of the lot on which the barn was to be erected, but delivered the lumber therefor, at the site of the building, according to plaintiff's method of doing business, with the exception of some which Mr. Waddell came and got with his own teams; that witness went up at two different times and took C. S. Higgins's note for $1,000 each time; that he did not ascertain that the title to the lot was in Grace E. Higgins until about the time of C. S. Higgins's failure, soon after which time the lien in the case was filed against Grace E. Higgins and C. S. Higgins.

Upon his cross-examination, in answer to the question whether Waddell or Higgins first spoke to him about the lumber, he answered that it was Mr. Higgins; that Higgins did not say anything about sending up any particular lumber; that he said Mr. Waddell was to build a barn for him; that Mr. Higgins had been buying lumber of him right along prior to that; that his orders were good; that when he took the notes one of them applied on some other property; that the lumber was charged on the books to C. S. Higgins; that when he came to file his lien, he changed his account from C. S. Higgins to Grace E. Higgins.

C. S. Higgins, who was sworn as a witness on the part

of the plaintiff, testified that he made the contract for the erection of the barn and for furnishing the lumber with Mr. Waddell; that he did not have anything to do with the plaintiff whatever, about getting the lumber, until he wanted some pay, and then Mr. Waddell came to me and wanted to know if I could let him have some money; that he then went to the plaintiff and gave him a note, at ninety days, which he said he was willing to take.

Mrs. Grace E. Higgins was also sworn as a witness on the part of the plaintiff, and testified that she was the owner of the lot on which the barn in question is situated.   Being requested to state whether she or Mr. Higgins hired the men or entered upon the erection of the barn, she answered: "I had nothing to do with it, and did not know anything about it;" that she knew that he built a barn there; that no conversation took place between herself and Mr. Higgins prior to the commencement of the erection of the barn concerning it; that she had nothing to do about the property or the care of it; that she was living on the lot when the barn was being built, was at home the most of the previous year; that she resides there permanently as her homestead; that she had seen material brought there on the ground; never made any objection to any one bringing material there, to any one; that she had nothing to do with it in any shape or form; that she did not know anything about it; that she could not help but see that the barn was being erected; but that if she had had any say about it she would not have had it done; that she never made any objection to any of the different parties that furnished material or workmen; that she had nothing to do with them at all.

There is a vast amount of other evidence, but the foregoing is all that it is deemed necessary to set out.   With this evidence before it the district court virtually found that the plaintiff did not furnish the building material for which he seeks to establish a lien, "by virtue of a con-

tract, expressed or implied, with the owner thereof, or his agent."

I have examined the cases cited by counsel for plaintiff in error.

In the case of *Schwartz et ux. v. Saunders*, 46 Ill., 18, while there was some question raised as to the rights of Mrs. Schwartz in the premises, what is said in the opinion upon that point comes in after the case had been decided on other points and so declared. So that the prominence given this point in the syllabus is not justified.

The case of *Anderson v. Armstead*, 69 Id., 452, turned upon the fact, that the wife withheld her deed from the records, thereby enabling her husband to hold out that he was the owner of the lot and house at the time he entered into the contract for painting the house for which the lien was allowed.

In the case of *Jones v. Pothast et al.*, 72 Ind., 158, the supreme court, without reciting either the facts or evidence, held that there was evidence before the trial court which justified it in holding that the husband acted as the agent of the wife, who was the owner of the property, in making the contract, although she testified that she never intended to charge her separate estate. That "If she authorized her husband to act for her, and as her agent to contract for the building of the house, the fact gives the mechanics the lien, though she may not have intended to charge the property."

Neither the Massachusetts nor the Pennsylvania cases cited are deemed to be in point.

The sole question for our consideration is as above stated: whether, upon the evidence before the district court, it could without error make the finding which it made as shown.

It cannot be denied that the circumstances relied on to estop Mrs. Higgins to deny that in ordering the lumber for the barn her husband acted as her agent, are worthy of serious consideration, and possibly standing alone would

be deemed sufficient.   But upon the evidence of the plaintiff, either alone, or taken in connection with that of C. S. Higgins, I think the trial court was justified in finding that in ordering the lumber by Higgins, or in filling the orders by Bradford, neither of them gave a thought of Mrs. Higgins, or of the lot, or the title to it.    When he received the lumber for the building Bradford did not know, nor did he inquire, where the building was to be erected.    It does not appear that he knew of the existence of Mrs. Higgins until after C. S. Higgins failed, which circumstance seems to have put him upon inquiry as to the title to the lot to which his lumber had gone.    Higgins's credit was good with Bradford; it does not appear how Mrs. Higgins's credit was, with or without the title to the lot.    Qualifying what is said above as to acts of estoppel on the part of Mrs. Higgins, they were merely negative or passive and do not appear to have come to the knowledge of Bradford. It does not appear that she ever knew that any of the building material was being placed on the lot by Mr. Bradford, or that any circumstance or opportunity occurred calling upon her to speak to him as to her title to the lot.    It may be the law that where an insolvent husband, known to be insolvent by his wife, uses the means which ought to go to his creditors in putting improvements on her separate property with her knowledge, she is estopped to deny the equitable interest of the creditors in such improvement and property.    But that is not this case; Higgins was not insolvent, in fact, nor does it appear that Mrs. Higgins doubted, or had any cause to doubt, his entire financial responsibility at the date of the furnishing of the lumber by the plaintiff. (See *Barto's Appeal*, 55 Pa. St., 386, cited by plaintiff in error.)   I do not think there is reversible error in the finding.

The decree of the district court is

                                            AFFIRMED.

THE other judges concur.