# 18

## JOHN J. SCHWARTZ *et ux.*

### *v.*

## JOSEPH SAUNDERS.

1. CONTRACTS—*abandonment.* Where a party undertakes, under a contract, to do a thing, not of itself impossible, he must do it, before he can reap any advantage from the contract.

2. SAME—*mechanic's lien.* Where a party contracted with another to do the carpenter work on a brick building then in the course of erection, to be paid for as his work progressed, on estimates to be furnished by the architect of the building, and the brick wall was blown down, after an estimate had been made, and before the contract was completed, and he was unable to proceed by reason thereof, and the owner of the building refused to pay the amount of the estimate according to the contract: *Held,* that the contractor, under such circumstances, was justified in abandoning the contract, and was entitled to enforce a mechanic's lien for the work done.

3. A carpenter made a contract with the owner of a building then in the course of construction, to do the carpenter work and furnish the materials therefor, the work to be paid for as it progressed, upon estimates to be furnished by the architect, and the owner refused to pay the amount of the estimate according to contract: *Held,* that this would justify the carpenter in abandoning the contract.

4. The plaintiff entered into a contract with the defendant, to do the carpenter work and furnish the materials therefor, upon a brick building; the mason work was to be done by another and independent contractor; after the brick work was nearly completed, and a part of the carpenter work done, the brick walls were blown down: *Held,* that the loss as to the carpenter work fell upon the defendant.

5. If, however, the plaintiff had contracted to erect an entire building for the defendant, and before it was completed, it was destroyed, the loss would fall on the plaintiff.

6. MECHANIC'S LIEN—*rights of married women—estoppel.*—If a contract for the erection of a building is made by the husband, and the same is erected on the real estate belonging to the wife, in her separate right, with her full knowledge, approbation and consent, and she does not disclose her interest, and knowing what is being done, takes no steps to prevent it, she will be estopped from setting up her rights as a defense to a mechanic's lien.

7. MARRIED WOMEN—*earnings during coverture.* The earnings of a married woman during coverture belong to the husband; and any property purchased therewith is subject to the husband's contracts and debts.

APPEAL from the Superior Court of Chicago; the Hon. Joseph E. GARY, Judge, presiding.

Joseph Saunders filed his petition for a mechanic's lien in the Superior Court of Chicago, against John J. Schwartz and wife. On the trial the jury found in favor of the petitioner, and assessed his damages at $2,094.84. A motion for a new trial being overruled, a decree of sale was rendered in accordance with the verdict. The defendants brought the case to this Court by appeal. The facts are sufficiently stated in the opinion.

Messrs. FULLER & SHEPARD, for the appellants.

Messrs. JONES & GARDNER, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a petition to enforce a mechanic's lien, filed in the Superior Court of Chicago, by Joseph Saunders against John J. Schwartz and Wilhelmina, his wife. On a trial by a jury, a verdict was found for the plaintiff, on which judgment was rendered, a new trial having been refused.

To reverse this judgment, the defendants bring the case here by appeal, and assign errors.

The building to be erected was of brick and of large dimensions, tall and narrow and long. The brick work was contracted to be done by another party, with whom it does not appear the plaintiff had any connection; he himself was to do all the carpenter's and joiner's work on and about the walls when they should be erected, and furnish the materials for the same, from time to time as the mason work progressed, and as by the progress of the same might be required, and was to receive therefor, when his work should be finally completed, five thousand three hundred and ninety-nine dollars and thirty-three cents; the

work to be done under the direction of superintendent Bauer, the architect of the building. Plaintiff was entitled to demand and receive from the architect, from time to time, estimates of the work done by petitioner on the building, and of materials furnished, which estimates, on presentation to defendant, were to be immediately paid by him; the payments to apply on the contract price, etc., and any balance remaining when the work was fully completed, was then to be fully paid. The petitioner furnished the materials and did work on the building, keeping pace with the brick layers, until the 22d day of October, 1866, at which time his bill amounted, under the contract, to about two thousand five hundred dollars, all having been done to the satisfaction of the architect.

The petitioner applied on the 16th of October to the architect for an estimate of the amount due him at that time under the contract, and received from him a written estimate or certificate, that he was then entitled to a payment of fifteen hundred dollars on the contract; that he presented this certificate on and at different times after its date, to the defendant and demanded payment, which was refused.

On the night of the 21st of October, 1866, the building, not then having received the upper joists, and being uncovered, was blown down by a high wind and destroyed.

The defendant Schwartz does not deny the presentation of this certificate and demand of payment on the day it was given by the architect, but denies he refused to pay it, but says he was ready and willing to pay it, but desired the plaintiff to wait a few days to enable him to make the payment, and that plaintiff consented to wait until the Monday following, which would be the 22d of October, and he says that he would on that day have paid the amount of the certificate, had it not been that the plaintiff, without fault of the defendant, and without excuse therefor, abandoned the work and refused to go on and complete his contract. The defendant admits the building was blown down at the time stated, but through no fault of his, and

he is not responsible for the consequences. He admits the building became and was of no value, and if ever completed would have to be almost entirely rebuilt; but he denies that the performance of the plaintiff's contract became thereby impossible, but that it was possible notwithstanding for the petitioner to do all the wood work necessary about the building and fully complete it according to the plans and specifications, and of the dimensions and in the manner specified in the contract and to furnish the materials therefor, and to perform fully every part of his contract, and to complete all the carpenter's and joiner's work, including roofing and tinning, in accordance with the contract. And he insists, after the building was blown down, it was the duty of the plaintiff to go on with and complete and perform his contract according to its terms; all which he has refused to do.

This assumption by the defendant is the principal point in his case. He contends, that when a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it in his contract.

We had occasion, in the case of *Bacon et al.* v. *Cobb et al.,* 45 Ill. 47, to examine this principle, and find it as stated by counsel, and so are the authorities cited by him. The case of *Tompkins et al.* v. *Dudley et al.,* 25 N. Y. 272, was where one had agreed to build a house on the land of another, and had substantially performed his contract, but had not completely finished the house nor delivered it, when it was destroyed by fire; he was held liable to an action by the owner for money advanced on the contract, and damages for its non-performance. No property vested in the building in the owner of the land until it was finished and delivered.

The case in 19 Pick. 275, *Adams* v. *Nicholl,* is to the same effect. The court say, after the conflagration the contractor might have proceeded under the contract, and if he had com-

pleted a house according to the terms of his agreement, the plaintiff would have been bound to perform his part of the stipulation; clearly holding that having contracted to erect and finish the building and deliver it as such, he was not excused by its accidental destruction, from performance.

The case from 2 Kernan 99, *Harmony* v. *Brigham*, sustains the same view, and so does the case of *School District No.* 1 v. *Dauchy*, 25 Conn. 530. That was a case where a party had agreed to build and complete a school house by the first Monday of May, and had nearly completed it on the 27th of April, when the building was destroyed by lightning, whereby, alone, he was prevented from performing his contract, which was absolute in its terms; the court held the non-performance was not excused by such destruction of the building.

The case of *School Trustees of Trenton* v. *Bement et al.*, 3 Dutcher, (N. J.) 513, was where a contract was made to build and complete a building and find materials, for a certain entire price, payable in instalments as the work progressed. It was held, the contract was entire, and if the building, either by the fault of the builder, or by inevitable accident, was destroyed before completion, the owner could recover back the instalments he had paid, though the falling down and destruction of the building was, in this case, by reason of a latent defect in the soil.

These, it may be said, are hard cases. Yet such is the stubbornness of the rule of law, when a party undertakes to do a thing, not of itself impossible, he must do it before he can have any advantage from the contract.

But a marked and controlling difference will be observed between the case before us and those cited, and that is, the plaintiff had not undertaken to erect and finish this building and deliver it. Nor was it possible, after its prostration, for him to perform any part of his work until the walls were replaced, with which he had nothing to do—it was no part of his contract to build the walls, but only to put his materials and

labor into and upon walls which the defendant was bound to prepare for the reception of the carpenter's work.

Before the walls had fallen, the defendant had failed to pay the estimate to which the appellee was entitled under the contract, and after their fall appellant insisted and claimed that although he had failed to pay appellee for the work he had done, he was bound to proceed and replace his portion of the work thus destroyed, and that too, without any compensation. This was an unjust demand, with which appellee was not bound to comply. He had once done the work and for which payment had been refused.

That he had a right to abandon the work, under the circumstances, seems a proposition so plain as to require no argument. The claim made by appellant upon the appellee, to replace the work destroyed, and that too, gratuitously, was in effect, a denial of all obligation to pay for the work done, and was of itself a sufficient justification to appellee to abandon the contract.

The question then arises, did appellee, by abandoning the contract, lose his lien? We think not, for the reason that appellant himself, prevented appellee from performing the entire contract, not only by failing to pay according to the contract, but by the unjust and unconscionable demand made upon him by appellant after the disaster to which we have referred.

It is insisted by appellant that the destruction of the building by this accident, absolved both parties, and protected appellant from any action by appellee for the work that he had done, and reference is made to the case of *Appleby* v. *My s*, 2 English Com. Pleas, 651, in support of the position. This case we have examined, and from the statement of it, it would appear the contract was unlike the one between these parties, which provides, in terms, that eighty-five per cent. of the work estimated by the architect, should be paid as the work progressed, whilst in the case cited, no payment was to be made

until the work was completed, and as it was not completed, the mechanic could not recover for the work he had done. Why appellee should not be paid for the work he had done, and which had been accepted, and have a lien therefor, we cannot perceive. He had fully performed his contract, an estimate had been furnished him of the amount due, which appellant failed to meet by prompt payment, as he had promised to do. A great hardship would be worked in such cases, where builders, having made their contracts, as they are presumed to do, with reference to the state of the market, for the materials to be employed by them, shall be deprived of the means of supplying such materials, by reason of defaults in payments, on which they must be supposed to have relied when they entered into the contract. We repeat, this failure to pay, and this unconscionable demand made upon appellee to replace the work and materials, gratuitously, fully justified appellee in doing as he did.

We do not perceive any other point made on this record, requiring particular examination, as those considered, decide the controversy.

Something has been said about Mrs. Schwartz's interest in this lot, and it is denied by appellants, of whom she is one, that the lien operated on it. The contract for the building was made with her full knowledge, approbation and consent, as we are bound to infer from the testimony, and she did not disclose her interest. She knew very well what was going on, and she took no steps to prevent it, and ought now to be estopped from objecting, or of setting up her right to defeat the plaintiff. The cases of *Higgins* v. *Ferguson,* 14 Ill. 269, and *Donaldson et al.* v. *Holmes* 23 ib. 85, cited by appellee, are in point.

But was not this leasehold, for such was the lot in question, the property of the husband? It was proved it was purchased with the earnings of the wife while *covert.* This court has decided such earnings belong to the husband and are not saved to the wife by the act of 1861. *Bear* v. *Hays,* 36 ib. 280. This

being so, in equity they can be followed up, and the thing purchased with those earnings, be subjected to the husband's contracts and liabilities.

As to the amount of the verdict, there was some conflict of evidence on the point, which the jury have attempted to reconcile, and we cannot perceive in so doing they have committed any error, which would justify this court in disturbing their verdict.

As to the instructions, we perceive nothing objectionable in them. They put the law of the case fairly before the jury.

There being no error in the record, the decree must be affirmed.

*Decree affirmed.*