THE PIKE ELECTRIC COMPANY, Respondent, v. THE RICHARDSON DRUG COMPANY, Appellant.

**St. Louis Court of Appeals, November 25, 1890.**

1. **The Doctrines Announced** in *Fairbanks v. Richardson Drug Co., ante,* p. 262, are reannounced and again applied in this case, in which the contract sued upon was one to furnish and erect a plant for electric lights and the appurtenances thereof.

2. **Distinction Between Contracts for Work and Labor and Contracts of Sale.** Where the contract is one as to which the work and labor required for the performance of it are expended not in creating the materials contracted for, but merely in setting them up on the premises of the vendee, or in attaching them to other property of his, so as to fit them for use, *semble* that the rule applies that, where the doing of the work and labor is merely auxiliary, and the delivery of the chattel is the principal thing, the contract is one of sale ; but, where the work and labor to be performed are the principal thing, and the supplying of the material is merely auxiliary, the contract is to be regarded as one for work and labor.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED.

*Powell & Ferriss*, for appellant.

*N. Oscar Gray*, for respondent.

THOMPSON, J.—This action is brought to recover the reasonable value of certain labor and materials, furnished by the plaintiff to the defendant under the written contract below set out. The action is not brought to recover the price named in the contract, because, before the contract was completed by the plaintiff, and while it was in process of completion, the premises of the defendant were destroyed by an accidental fire, consuming all the materials which, by the terms of the contract, the plaintiff had agreed to furnish, and rendering valueless the labor already done thereunder. The contract in question consisted of the following proposal by the plaintiff to the defendant, which the defendant accepted in writing:

"We propose to furnish you and install in your warehouse and offices, northwest corner Fourth and Clark avenue, this city, an electric-light plant manufactured by the Westinghouse Electric Company of Pittsburg, as follows:

"DYNAMO.

"One number 12 D. C. dynamo, capable of generating current for three hundred lamps of sixteen-candlepower each. Said dynamo to be set on suitable foundation, thoroughly insulated and provided with adjustable belt, tightening tension case, pilot lamp attachment and double-pole dynamo switch.

"LAMPS.

"Two hundred and sixty-four lamps of sixteen-candlepower each, or their equivalent in lamps of higher

VOL. 42—18

candlepower, as may be desired, each lamp provided with latest improved key socket, and suspended from ceiling by means of double conductor lamp cord, and hung where you may designate.

"Each elevator will be supplied with one light, current for which will be furnished from special copper circuit and brush contact. We agree to attach to the mains any extra sixteen-candlepower lamps you may desire, up to capacity of machine, at a cost of $2.25 each, including key-socket lamp and shade.

### "ELECTRIC APPLIANCES.

"One ammeter, one indicator, one ground detector, one rheostat, one connecting board in dynamo room containing the above appliances, as well as suitable bus bars with safety blocks and fuses, thus thoroughly protecting each and every circuit at its starting point.

"We will supply three private offices on first floor with polished brass wall brackets each for as many lights as may be desired in the separate offices.

### "SHADES AND HOLDERS.

"We will furnish and attach two hundred and sixty-four two and one-fourth-inch brass shade holders, and the same number of either nine-inch, tin, or eight-inch scalloped, porcelain shades, as you may desire.

### "WIRING AND CONSTRUCTION.

"We propose to wire your building with mains and feeders for three hundred lamps, allowing a loss in potential adequate to the proper operation of plant, and do all work in a first-class, workmanlike manner, and in strict accordance with existing rules of the St. Louis Board of Underwriters. We will furnish all labor and material necessary, soldering each joint and cover connections with rosettes, providing rosettes also for each lamp drop. Safety fuses and cut-outs will be provided, wherever necessary, and placed in all cases so as to be easy of access. On your first and second floors,

offices and fancy-goods department, we propose to cover all wiring with wood molding, neatly matched and securely put up.

### "EXPERT LABOR.

"We will furnish expert to instruct thoroughly in all details connected with plant during the time allowed for trial of same, and his services will be furnished at all times during construction, insuring the promptness and neatness of the work.

### " BELTING.

" One eight-inch, double, raw-hide, endless belt of requisite length will be furnished ready for construction with dynamo and engine.

### "PRICE.

"Price of plant, as above described, nineteen hundred ($1,900) dollars.

### " GUARANTIES.

"This company guarantees twelve sixteen-candle-power lamps to the horsepower, and an average life per lamp of eight hundred hours under proper conditions. We agree to replace all lamps which do not meet this average.

" We agree to give you thirty days' trial of plant before final acceptance. '

" We guarantee our sixteen-candlepower lamps to give actual full candlepower at their proper voltage, and under same conditions to be free from blackening of globes or visible deterioration of candlepower during average life.

" We guarantee you against damages on account of suits for infringement of patents in connection with our system.

" We guarantee the armature of this machine free from defects for the period of two years from date, and will replace same free of cost, if found defective.

" We agree to furnish you with renewals of sixteen-candlepower lamps at seventy cents each.

"The bearings of this dynamo will not abnormally heat at full speed, and we use no cold water, or other device, to keep same cool.   *   *   *.

" The above guarantees are to be covered by bond of the Westinghouse Company, Pittsburg."

This contract was dated the eighth of December, 1888. At this time the defendant occupied a large six-story building on the corner of Fourth and Elm streets in this city, and was conducting therein a wholesale drug business. The defendant occupied the building as the tenant under a ten-year lease from Edward J. Gay, the owner, which lease, at the time of this contract, had about six years to run.

The plaintiff proceeded, after the execution of the contract, with the erection of an electric-light plant in the building, and on December 31, 1888, had not yet completed the wiring. The dynamo and appliances connected therewith were, on that date, in the basement of the building, but not set up, nor completely unpacked ; and this was so with the lamps, shades and other similar appliances, which were in the original packages, although within the building.

When the plant would be completed, the dynamo would be connected with an engine, and also with the wires running through the building. Of the entire contract price, the wiring would represent about four hundred dollars ; the dynamo and appliances about one thousand dollars, and the globes, shades and other fixtures about four hundred dollars.

The erection of the plant was under the control of the plaintiff's superintendent, and, according to custom, when the plant was completed, a trial run would be made. The plant was not insured either by the plaintiff or the defendant. The entire premises, including this plant and material, were completly destroyed by an accidental fire on the early morning of January 1, 1889.

The fire was the same as that described in our opinion in the case of Fairbanks against this defendant, just delivered, and, though accidental, originated within the defendant's building, and was presumptively the result of human agency. There was no evidence tending to show that it was the result of what is known in the law as a *vis major*, or *act of God*, on the one hand, or that it was the result of any negligence or other fault imputable to the defendant, on the other hand.

The plaintiff, in putting up the wires, had made a deviation from the terms of the contract,—a matter to which we shall not again refer, because, in the view we take of the case, it becomes unimportant. The wires throughout the building were run on the outside of the walls and ceilings, and held thereto by cleats or short pieces of wood screwed to the wall, similar to the manner in which they are run in the St. Louis court house, where the trial of this case took place, and and in no part of the building were they run *within* the partition.

The erection of the electric plant was entirely under the charge and management of plaintiff. Defendant had no authority or control over the same, and plaintiff had no control or authority over the building, further than was necessary for the purpose of erecting this plant.

The case was tried by the court sitting as a jury. At the close of the trial, the evidence developing the foregoing state of facts, which are not contradicted, the court refused an instruction to the effect that the plaintiff could not recover, and gave judgment for the plaintiff in the sum of seventeen hundred dollars, and the defendant prosecutes this appeal.

It is perceived that the facts of this case closely resemble those in the case of Fairbanks against this defendant, just decided ; and we have come to the conclusion that our judgment in this case must be the same as in that. We regarded the contract in that case, looking at it with reference to its general scope and

meaning, as a contract for the sale of a chattel; and we regard the contract in this case, viewed in the same manner, as a contract for the sale of a collection of chattels. In the application of the rule in *Lee v. Griffin*, 1 Best & S. 272, there can, of course, be no distinction between a contract which results in the sale of a single chattel, and a contract which results in the sale of a collection of chattels; and here the collection of chattels is designated in the contract between the parties as "an electric-light plant." The parties themselves, therefore, treated the thing to be sold as a unit; and, in our judgment, the case stands just as though the contract had been a contract to furnish and attach the dynamo to the steam engine in the defendant's building which was to run it, and also to its other proper connections, for a round sum, say one thousand dollars.

We regard this case, like the *Fairbanks case*, as distinguishable from *Haynes v. Second Baptist Church*, 88 Mo. 285 (affirming s. c., 12 Mo. App. 536), on the essential ground that the contract in that case was a contract to do work and labor on a building in process of erection, which work and labor, when done, would enter into and form a part of the building, and incidentally to furnish the materials to be consumed in such work and labor; while we regard this as a contract to furnish a collection of chattels, and to set them up as a single system of machinery, with a warranty of certain results. That the contract in that case was, in its essential features, a contract to do work and labor, and not a contract of sale, appears not only by the statement of the facts of that case by the supreme court and by this court, but it will better appear from the language of the contract itself, which we subjoin.

"The parties of the second part covenants and binds (*sic*) each and themselves to make, finish, polish and put up complete, furnishing all labor and materials for the pews in audience-room and in gallery, also the screen back and over pulpit baptistery, the pulpit and

the organ front, for the Second Baptist Church, corner Locust and Beaumont streets, St. Louis; the materials to be the best quality seasoned black walnut; the seats for pews of best, clean, white ash; the pews to be made after design number 30, furnished by the parties of the second part, the lower panel in the ends to be plain in the gallery; the seats to be fifteen inches wide and fourteen and one-half inches high; the organ front, pulpit and screen to be made after plans made by Charles C. Nichols, of Albany City, New York; the work to be done in the very best workmanlike manner, and to the entire satisfaction of the superintendent and building committee. The parties of the second part agree so have the above-mentioned work finished and put up complete by or before the first day of December, 1878, under a forfeiture of ten dollars per each and every day's delay beyond the above-mentioned date, unless delayed by the building not being ready to put up same.

"The parties of the second part further agree to keep the parties of the first part free and harmless from all mechanics' liens, for either labor or material; and for the faithful performance of the above-mentioned work, and furnishing materials for same, the parties of the first part agree to pay the parties of the second part the sum of forty-eight hundred ($4,800) dollars in lawful money on the completion of the work and acceptance of the same."

If this contract. is drawn closely into comparison with the contract in the case at bar, the conclusion must, we think, be reasonably plain that the one is essentially a contract for work and labor, and the other a contract of sale, within the rule in *Lee v. Griffin, supra.* That rule, as formulated in the opinion of Mr. Justice BLACKBURN, and approved by this court in *Burrell v. Highleyman*, 33 Mo. App. 183, was this: If the contract be such *that it will result in the sale of a chattel*, the proper form of action, if the employer

refuses to accept the article when made, would be for not accepting. But, *if the work and labor be bestowed in such a manner as that the result would not be anything which could properly be said to be the subject of sale, then an action for work and labor is the proper remedy.*

It is true that, by the terms of the contract in this case, and, also, to some extent, by the terms of the contract in the *Fairbanks case*, work and labor were to be done by the plaintiff to set up the chattels in the defendant's building and attach them thereto. But we do not think that this circumstance takes the case out of the category of contracts of sale and places it in the category of contracts to perform work and labor. What is true in this case will, no doubt, be true in many cases, that difficulties will arise in determining to which category the contract belongs. For these difficulties we are not responsible ; nor are the judges who have formulated the rules which it is our duty to apply. As applicable to a case like *Lee v. Griffin*, *supra*, where the work and labor were expended in creating the chattel itself, the observation of Mr. Justice BLACKBURN, that the relative value of the labor and of the materials on which it is bestowed, cannot in any case be the test of what is the cause of action, meets the view which this court took in *Burrell v. Highleyman*, *supra*. But, as applicable to a case where the work and labor are expended, not in creating the materials, but merely in setting them up on the premises of the vendee, or in attaching them to other property of his, so as to fit them for use, the observation of Mr. Justice CROMPTON, in *Lee v. Griffin*, that where the doing of the work and labor is merely *auxiliary*, and the delivery of a chattel is the principal thing, it is a contract of sale ; but where, as in the case of a printer manufacturing a book, the work and labor to be performed are the principal thing, and the supplying of the materials is merely auxiliary, it is to be regarded as a contract to do work and labor,

seems to be sound. In such a case as the case at bar, the relative value of the completed chattels constituting "the electric-light plant," which the plaintiff agreed to furnish to the defendant, and of the labor required to place it in the defendant's building, must have an important bearing, in determining which is the principal, and which the auxiliary, element in the contract; and the evidence shows that, out of the whole contract price, "the wiring would represent about four hundred dollars, while the dynamo and its appliances would represent one thousand dollars, and the globes, shades and other fixtures about four hundred dollars." It thus appears that the dynamo, lamps and other chattels, complete in themselves, brought by the plaintiff to the defendant's building in carrying out their contract, constituted merely three-fourths of the entire value. The contract must, then, it seems, be regarded as one in which the sale and delivery of chattels is the principal thing, and the doing of the work necessary to set them up in, and attach them to, the defendant's building is an auxiliary thing; and this, we think, takes a contract of this kind into the category of contracts of sale.

There remains this further question, whether, although a contract may be a technical contract of sale within the meaning of the statute of frauds, yet, where the terms of the contract are such that it is necessary to bring the chattels upon the premises of the vendee, and there do work and labor in order to set them up there and prepare them for use by the vendee, the case does not still remain within the principle of *Haynes v. Second Baptist Church, supra.* If that principle can be extended to a technical contract of sale, this question must certainly be answered in the affirmative. If the question were *res nova*, it would seem to be an unanswerable argument that, in the case of a sale with such a supplemental undertaking, the vendor impliedly engages to keep his premises in condition to receive the

goods, and hence becomes an insurer of them while they are on his premises in process of being set up or attached, just as much as he impliedly engages so to keep his premises where the contract is to do work and labor upon them and furnish materials as an incident to the work and labor.  In other words, if the question can be determined without reference to the question whether it is a contract of sale or of work and labor, not only this case, but also the *Fairbanks case*, stands within the principle of *Haynes v. Second Baptist Church.* But, for the reasons which we have given in our opinion in the *Fairbanks case*, we cannot determine it without reference to the question whether it is a contract of sale.  We assume that no authoritative court has ever held that, in the case of a mere sale, the vendee assumes the risk of the goods before the title has passed to him, in the absence of a special agreement to that effect ; and we have pointed out, in our opinion in the *Fairbanks case*, that in *Haynes v. Second Baptist Church*, both the supreme court and this court proceeded on the assumption that they were dealing with a contract for work and labor, and not with a contract of sale.

In this connection, our attention has been specially invited to the decision of the court of appeals of New York in *Niblo v. Binsse*, 1 Keyes (N. Y.) 476, as one of the cases cited and relied on by the supreme court, and by this court, in *Haynes v. Second Baptist Church*, as being especially analogous in its facts to the facts of this case.  It is true that the facts of that case more nearly resemble the facts of this case than any of the cases thus cited and approved.  But, nevertheless, we see clearly in them the case of a mere building contract. It was a contract to furnish steam-piping and coils for a hotel building in process of erection.  It is plain that this piping would be built into the house itself, and, with the attached coils, would become a part of the

building. It would be analogous to a stationary furnace, or any other part of a building which would not be detached and removed without a partial demolition of the building. Such a contract is clearly not a contract which will result in the sale of a chattel, within the rule in *Lee v. Griffin, supra,* nor does it comply with any of the ordinary conceptions of the sale of chattels, but it is what the New York court of appeals called it, the case of a contract *to do work upon a house.*

It seems that, in order for this contract to be regarded as a contract to do work and labor for, and to furnish materials for, a building, the work and labor and materials must become a part of the building, and, hence, of the *realty,* on some theory, or for some purpose. But we know of no theory on which, or purpose for which, it can be so regarded. In the *Baptist Church case* the materials undoubtedly became a part of the building in such a sense as to make the property subject to a mechanics' lien. But several decisions of our supreme court show that such was not the case with the electric-light plant which the plaintiff undertook to furnish the defendant in this case. That court held in *Collins v. Mott,* 45 Mo. 100, that engines, boiler, etc., placed in a building by a tenant with power of removal, were not the subject of a mechanics' lien. In *Graves v. Pierce,* 53 Mo. 423, the same court held that a carding machine fixed in a building is not the subject of such a lien, proceeding on the ground that it was not furnished for a building and did not become a fixture and a part of the realty. In *Richardson v. Koch,* 81 Mo. 264, the same court held that an engine, boiler and machinery, designed for separating and crushing metallic ores, were no part of the realty ; were not subject to a mechanics' lien; and could be recovered in replevin as mere chattels, and this although the building in which they had been placed was erected for the express purposes of being used as a mill for crushing and separating metallic ores, and to receive this identical machinery.

We do not understand that it is contended that, if this is to be treated as a contract of sale, there had been a delivery at the time of the fire. There is no room for such a contention. The contract contains this clause : " We agree to give you thirty days' trial of plant before final acceptance." It was, therefore, a sale on trial or approval, and the law is well settled in regard to such sales that the title does not pass until there has been an approval, so long as the time allowed by the contract for approval remains open. *Hunt v. Wyman,* 100 Mass. 198 ; *Mowbray v. Cady,* 40 Iowa, 604 ; *Pierce v. Cooley,* 56 Mich. 552 ; *Elphic v. Barnes,* 5 C. P. Div. 321.

We, therefore, conclude that on the foregoing state of facts, which are not disputed, the defendant is entitled to judgment. The judgment of the circuit court will be reversed. All the judges concur.