# Siegel, Cooper & Company v. Eaton & Prince Company.

1. CONTRACTS—*Part Performance—Recovery in Case of Loss by Fire.*—Where the point is reached in the performance of a contract to put work into a building, at which the party doing the work is entitled to be paid, he may recover to the extent of the money due him by the terms of the contract, notwithstanding the work done and the structure into which it has been put, is destroyed by fire, or other accident, not within his control.

**Assumpsit**, for money due on contract. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 2, 1895.

A. BINSWANGER, attorney for appellants.

FLOWER, SMITH & MUSGRAVE, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a suit instituted by appellee to recover for the part performance of a contract entered into with appellant for the erection of an elevator in a building occupied by appellant. The case was tried below by the court without a jury, upon an agreed statement of facts, and a judgment was rendered in favor of appellee for $1,390, from which this appeal is prosecuted.

The statement of facts, and material portions of the contract which was a part thereof, were as follows:

"It is hereby stipulated and agreed that the plaintiff and defendant entered into the contract hereto annexed on the first day of June, 1891.

That under the said contract, the plaintiff, on the first day of August, 1891, had the engine mentioned therein on its foundation, but not leveled nor fastened to said foundation, and had prepared material and done labor under said contract, to the total value of $1,390.

That neither the cabs, the cage, nor the cable for the same, was on said premises at the time the premises of Siegel, Cooper & Company were destroyed by fire.

That the engine had been placed on the foundation, as aforesaid, about six o'clock on Saturday afternoon, August 1, 1891.

That fire destroyed the premises of Siegel, Cooper & Company, in which said elevator and machinery therefor, under said contract, was to be placed, and broke out about 7.30 o'clock on Monday morning, August 3, 1891.

That all work to be done under the contract had not been performed when the premises were destroyed by fire.

That the premises were destroyed by fire without the fault of either party to the contract, and nothing had been paid to the Eaton & Prince Company by Siegel, Cooper & Company under or upon said contract.

That defendant had the hatchways ready for the elevator work on July 10, 1891, and plaintiff had the uninterrupted use of the hatchways on and after said date.

It is further stipulated that the jury in this case shall be waived, and the same submitted to the court for trial without a jury.

FLOWER, SMITH & MUSGRAVE,

Attorneys for Plaintiff.

A. BINSWANGER and F. A. WILLOUGHBY,

Attorneys for Defendant."

The parts of the contract which have a bearing on the case are as follows:

"CHICAGO, ILL., May 16, 1891.

Siegel, Cooper & Company:

We hereby propose to furnish and erect in your store, at State and Adams streets, one of our improved worm-geared steam passenger elevators.

*　　*　　*　　*　　*　　*　　*

This engine will be set on a substantial stone foundation, at the top of which will be placed a cut cap stone, and the whole firmly secured with heavy iron anchor bolts from bottom of foundation to bed plate of engine.

*　　*　　*　　*　　*　　*　　*

Every part of the elevator and appliances will be put up in a neat, substantial and workmanlike manner, and is guaranteed to be free from all defects in material or workmanship, and, should any appear in a reasonable time, we will make such defect good at our own expense.

You are to prepare and enclose the hatchways, and to prepare a place for the engines; to do all cutting of the walls and masonry; to furnish proper supports in place for guide posts and sheave-beams, and do all painting. Should the roof be too low to allow the cage to travel to the top landing, it may be necessary to put the sheaves and sheave-beams on the roof. In that case you are to protect them. The hatchways are to be ready for the elevator work by the 10th day of July, 1891. After that date we are to have the uninterrupted use of them. The whole apparatus will be

put up in a complete running order, ready for steam connections, by the 15th day of August, 1891, for the sum of twenty-five hundred dollars ($2,500). Payment to be made as the work progresses, as follows: One half when the engine is on foundation, and final payment to be due and payable when the elevator is put up in good running order. Should any delay in the shipping or erecting of the elevator be occasioned by the purchaser, then the last payment shall be considered due on the date named for completion.

Should any delay, caused by you, occur in the erecting, after the men and material are at the building, or after the erecting is accomplished, ready for steam and exhaust connections, then you are to pay for time and expenses of men, caused by such delay.

Respectfully submitted,

EATON & PRINCE Co.

F. H. P."

"We hereby accept the above proposal and agree to all its conditions and terms of payment therein contained.

SIEGEL, COOPER & COMPANY,

June 1, 1891."

It is contended that the contract was an entire one for an entire consideration, and that the fire having occurred before its entire completion no recovery could be had. We think otherwise. By its terms the contract provided that one half of the contract price should be paid " when the engine is on foundation," and the other half when the elevator should be " put up and in good running order."

One of the agreed facts was that before the fire occurred the engine was " on its foundation," but not leveled nor fastened to it.

There may be a material difference between placing the engine on its foundation, and placing it there and leveling and fastening it to the foundation. Johnston v. Ewing Female University, 35 Ill. 518.

We are not at liberty to say that although the engine was on its foundation, but not leveled nor fastened, it was not on its foundation within the very terms as well as intent of the contract.

The contract is plain enough in that particular, and does not require construction.   The appellee had, in the performance of the contract, reached a stage when one half of the contract price had become due to it for the work done.

Where the point is reached in the performance of the contract to put work into a building, at which the party doing the work is entitled to be paid, he may recover at least to the extent of the money due him by the terms of the contract, notwithstanding the work done and the structure into which it has been put be destroyed by fire, or other accident not within his control.   Schwartz v. Saunders, 46 Ill. 18.

The case of Appleby v. Myers, relied upon by appellant, is distinguished in Schwartz v. Saunders, *supra*, from a case like this one, on the ground that there " no payment was to be made until the work was completed, and as it was not completed, the mechanic could not recover for the work he had done."

The judgment, the reversal of which is asked, was, however, for $1,390, which is in excess of one half of the contract price due at the time of the fire.   It was agreed that appellee " had prepared material and done labor under said contract to the total value of $1,390."

It was expressly held in Cleary v. Sohier, 120 Mass. 210, which was the case of a partial performance of an entire contract to lath and plaster a building which was destroyed by fire while the work was in progress, the fire being an unavoidable casualty, that the building having been destroyed by fire, without fault of the plaintiff, so that he could not complete his contract, he might recover the reasonable worth of the work and material furnished, under the appropriate common count.

The case of Rawson v. Clark, 70 Ill. 656, is to the same effect.   There the building for which Clark had contracted to furnish the iron work was destroyed by fire after he had manufactured the iron and delivered one load, and Clark was sustained in a recovery of the contract price for the iron, it being shown that the price agreed upon for the iron

was distinct from that for putting it up. The court in its opinion said: "Appellees were in no default. They were ready and offered to fully perform within the time limited, but were prevented by appellant. The reason for their not entirely completing their contract by placing the iron in the building, was the default of the defendant in not having a building provided for the purpose." (See also Wilson v. Pickwick Co., 30 Ill. App. 333.)

As in Rawson v. Clark, so here, the appellee was prevented from entirely completing its contract by the default of appellant in not having a building provided for the elevator to be placed in.

It is clear from the contract and agreed statement of facts that the former was entered into by the parties with reference to the continued existence, during the performance of the work, of the building into which the elevator was to be placed.

The appellant was in default in not having the building for the work to be completed in, and being in such default we think the appellee was entitled to recover, as it did, for the agreed value of the material and labor it had furnished before the fire. Affirmed.