## Chicago Edison Company v. Huyett & Smith Manufacturing Co.

1. LOSS BY FIRE—*Upon Whom it Falls.*—Where property is without fault destroyed by fire, the loss falls upon the owner.

2. CONTRACTS—*Construction of—When Performance Becomes Impossible.*—Where, from the nature of a contract, the parties have contemplated the continuing existence of some particular specified thing as the foundation of what was to be done, in the absence of any expressed or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the accidental perishing of the thing without fault of either party.

3. SAME—*Performance Where the Subject-Matter is Destroyed.*—Where the continued existence of the thing upon which work is to be done is presupposed by the contract, one contracting to make certain additions thereto is not entitled to be paid the value of the work performed when the thing whose existence is essential to performance is, without fault, destroyed. So where a man undertakes to place in a house a ventilating system capable of removal, and which when destroyed by fire was his property, he loses what he had already done.

4. SAME—*Performance Depending upon Continual Existence.*—In contracts in which performance depends on the continued existence of a given person or thing, a condition is implied that performance is excused by the perishing of such person or thing.

Chicago Edison Co. v. Huyett & Smith Mfg. Co.

**Assumpsit,** for work and materials.  Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.  Heard in this court at the March term, 1896.  Reversed, with judgment for defendant.  Opinion filed June 29, 1896.

### STATEMENT OF THE CASE.

This was a suit by Huyett & Smith Manufacturing Company, a corporation of Detroit, Michigan, plaintiff, against Chicago Edison Company, a corporation of Chicago, Illinois, defendant, upon a *quantum meruit* to recover for materials furnished and labor performed under an express contract, which was not completed by the plaintiff, by reason of the destruction by fire of the building to which the materials were to be attached.  The controversy is founded entirely upon agreed facts set forth in the stipulation of the parties, which was read in evidence on the part of the plaintiff in the trial court.  This stipulation and exhibit disclose the facts narrated below :

Early in the year 1893, the International Music Company —sometimes referred to as the International Temple of Music—contracted with the owners of the First Regiment armory building, situated on the corner of Michigan avenue and 16th street, in Chicago, for the use and occupation of that building by the music company for musical entertainment purposes during the World's Fair season, beginning May 1, 1893, and ending October 1, 1893.  For the purpose of adequately lighting and ventilating the building during that period the music company, on March 9, 1893, entered into a contract with the Chicago Edison Company, whereby that company, for the consideration of $13,000, agreed to furnish and install in said building the electric lighting and ventilating apparatus, and the electric power, as required by the plans and specifications made by Adler & Sullivan, the architects employed by the music company. There were two sets of specifications attached to and made a part of the contract; one relating to the electric lighting, and the other to the ventilating apparatus.  In the former, it was stated that the lighting plant was to light the building during the World's Fair; that it would be temporary

in its nature, and that the contractor must, at the expiration of the music company's lease, remove all apparatus furnished under the contract, and restore the building to its original condition. In the latter, it was provided that the ventilation was to be temporary only, and that the fans, motors and belts, with their foundations and connections, were to be removed from the building, "and become the property of the parties furnishing them originally." The original bid of the Chicago Edison Company, from which the contract resulted, was conditioned upon the materials and apparatus remaining its property, and the contract itself, which included the work called for by both sets of specifications, the electric lighting and ventilating systems, provided that "all the equipment for electric lighting, power and ventilating, is to remain the property of the Chicago Edison Company, and may be removed by said company on or before (after) November 1, 1893." By the terms of the contract, Chicago Edison Company was to be paid in monthly installments, beginning May 1, 1893, but no payments were to be made until the entire work was performed to the satisfaction of the architects.

On April 4, 1893, Chicago Edison Company sub-let so much of the work as related to ventilating apparatus (excepting the electric motors) to the plaintiff, Huyett & Smith Manufacturing Company, by entering into the following contract, which is in the form of a proposal by the latter and an acceptance by the former company :

"CHICAGO, April 4, 1893.

The Chicago Edison Company, City.

GENTLEMEN: For the sum of thirteen hundred and fifty dollars ($1,350), payable thirty (30) days after the completion and acceptance of the installation, we propose to furnish and erect at First Regiment Armory Building, corner of Michigan avenue and Sixteenth street, Chicago, a ventilating system, including everything excepting electric motors, in accordance with the specifications of Messrs. Adler & Sullivan, architects, which are hereunto attached and hereby made a part of this proposal. We guarantee

that the ventilating system which we propose to install will do the work required by the specifications, and the entire installation will be made satisfactory to Messrs. Adler & Sullivan, architects. We agree that at the time of the expiration of the amusement season, which is not to be later than December 1, 1893, we will, if you desire us to remove the ventilating system from the building, pay you for the same the sum of $400.

It is further agreed that this entire installation will be completed and turned over to you in satisfactory working order not later than May 1, 1893.

The above price does not include any work in connection with the electric motors or belts, and it is agreed that the apparatus shall be accepted or rejected within thirty (30) days after the plant has been installed, and that the use of bottom horizontal fans will not be objectionable.

Respectfully,<br>
HUYETT & SMITH MFG. CO.,<br>
By S. B. CORBY, Western Manager.

Accepted:

THE CHICAGO EDISON COMPANY,

By L. H. FERGUSON."

The bill of particulars attached to plaintiff's declaration was as follows:

"DETROIT, MICH., May 25, 1893.

The Huyett & Smith Mfg. Co.,

Sold to Chicago Edison Company, Chicago, Ill.

Our order No.

Your   "    "

Terms.

| | |
|---|---|
| 2 steel plate fans | $900 |
| 1,600 lbs. galv. iron piping | 160 |
| Labor | 40 |
| Carpenter work | 20 |
| Freight | 30 |
| Cartage and hoisting fans | 80 |

$1,230 "

The following were specifications of the material and and workmanship required in the erection and completion of the electric equipment for the Trocadero, in 1st Regt. armory, for International Temple of Music:

"I. For the several dimensions and the arrangement of said building particular reference will be had by the contractors to the accompanying design for the work as made by Adler & Sullivan, architects, which design consists of the following drawings, to wit: All are drawn to a scale of —— feet to the inch, except when otherwise stated.

"GENERAL PLANS AND DRAWINGS OF BUILDING.

"The drawings and such writing, interlineation, figures and details as may be upon them, are to be considered a part of, and as illustrating these specifications. In the plans, blue designates stone; red, brick; yellow, wood; which is to be the general guide for the different contractors to execute from. Contractors are requested and expected to carefully examine the contents of these specifications, the printed portion as well as the written, as every word of the printing is to remain in full force unless it is erased.

"II. Contractors will be required to follow the plans above referred to, using for data and dimensions the figures marked thereon, in preference to what the drawings may measure on the scale; and also to furnish all materials and execute work in strict accordance therewith, and with the quality and kind of material set forth in the following specifications and shown by the aforesaid drawings.

\*  \*  \*  \*  \*  \*

"VI. It is to be understood and agreed by the contractors that the building or work is entirely at their risk, until the same is accepted, and they will be held liable for its safety to the amount of money paid them by the proprietor on account of the same. Risk of fire excepted.

"VII. In case of any unusual or unnecessary delay or inability by the contractors in providing and delivering the necessary materials and performing the necessary labor at the time the same is required, so as to insure the completion and delivery of the building or work at the time here-

inafter set forth and contracted, then, in such case, the proprietors, within one day after having notified the contractors in writing of their intention so to do, shall have the right to enter upon the work and procure such necessary materials or labor to be furnished or performed as the case may require, and remove from the same all defective materials or workmanship as in the judgment of the superintendents may be found necessary, and carry the work on to completion in such way as shall be proper and right, charging the cost thereof to the contractors, and deducting such charges from the amount of the contract price. "

Then follow other paragraphs usual in building contracts, and after these are the general specifications mentioned by counsel for appellant on page 7 of their brief. Then follow "specifications governing the installation of an electric lighting plant in the International Temple of Music, corner of Michigan avenue and Sixteenth street, Chicago, Adler & Sullivan, architects," which provide the method of wiring, the wire to be used, cut out cabinets, distributing wires, stage, rheostats, lamp schedule, distribution of lights, etc. Then follow "specifications governing proposals for furnishing, setting up in place and connecting in the armory building, corner of Michigan avenue and Sixteenth street, Chicago, Ill., the fans, motors and other appliances necessary to perfect a ventilating apparatus as hereinafter set forth and specified, and in accordance with the plans herewith submitted.

"PREAMBLE: This building is to be fitted temporarily as an amusement hall, and is to be ventilated by the Plenum system, using two fans, which are set directly underneath the roof of the building, and be driven by electric motors; the air will be delivered into two coves extending along opposite sides of the wall of the building on the first floor, and escape through a continuous opening near the ceiling in each cove, into the main room. It is intended that the foul and heated air will ascend through the light shafts and escape to the outside through certain louvers placed in the end wall of the large skylight in the roof.

"Bidders must examine the plans and specifications, take their own measurements at the building, and confer with parties figuring for, or engaged upon other portions of the work, to the end that the apparatus may be made to work successfully as a whole. In connection therewith the owners of the building are to furnish the space only in which to set the fans and motors, two coves with the continuous opening, and do such wiring as may be necessary to deliver the electric current for operating the motors to the starting device. Bidders must include the necessary iron or wooden ducts connecting the discharge outlet of each fan to its respective cove, all foundations or other supports for the fans and motors, do all cutting and repairing necessary for the proper installation of the work, and provide a suitable opening for admitting the proper amount of air to each of the fans, leaving the apparatus in successful running order and in operation.

"Fans.—Each fan must have not less than a 43″ x 86″ blast wheel, enclosed in a steel plate casing 44¾″ wide x 113″ high, having a 44″ x 44″ down blast outlet; they must be supplied with a full set of compression grease cups conveniently arranged, and such sized pulleys as will give the proper speed when driven by the motors without the intervention of countershafts.

"Each fan must be in perfect running balance, free from all vibrations, noise and other disagreeable results, and have a guaranteed capacity to deliver through the continuous opening of the coves not less than 40,000 cubic feet of air per minute when running at not to exceed 240 revolutions per minute and operated in connection with the constructional complications of the building and the connecting ducts."

Then follow the specifications for motors, which are not included in the contract in question.

Then follows the proposition of the Edison company addressed to Adler & Sullivan, architects, for the doing of the work, and also the agreement between the Chicago Edison Company and the International Temple of Music.

ISHAM, LINCOLN & BEALE, attorneys for appellant.

BULKLEY, GRAY & MORE, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The question in this case is, upon whom of two equally innocent parties shall a loss by fire fall.

This must be determined by an ascertainment of whose property it was that the fire destroyed. Where property is without fault destroyed by fire, the loss falls upon the owner. Wells v. Calnan, 107 Mass. 514.

Neither of the parties to the contract under consideration owned the building into which the ventilating apparatus was to be put. Appellant had merely a contract to place a certain plant in the building, and sub-let to appellee the making and installing of ventilating machinery.

The articles placed in the building by appellee were such as could easily have been removed therefrom; indeed, the contract recognizes that such removal was feasible if not probable. It containing the following : " We agree that if at the time of the expiration of the amusement season, which is not to be later than December 1, 1893, we will, if you desire us to remove the ventilating system from the building, pay you for the same, the sum of $400."

The contract was executory; it was not a sale of specific goods, and therefore no title passed at the making of the agreement. Benjamin on Sales, Sec. 308, p. 248 of 6th Am. Ed.

If, upon the day of the fire, appellee had resolved and proceeded to take out all or any portion of the material before then by it placed in the building, and to devote such goods to other uses, it would have had a right to do so; for the material was yet its property.

It had not agreed to put in any specific fan, but a ventilating system.

It was to be paid $1,350 thirty days after the completion and installation of a ventilating system in accordance with certain plans and specifications.

Such being the case, its property in this building was destroyed by fire.

Upon the trial of this cause, at the instance of the plaintiff, the court held as a proposition of law, the following:

"The court hold as a proposition of law upon the agreed facts in this case, that the destruction of the building upon which the contract entered into between the parties was to operate, in effect annulled the contract; it excused the plaintiff from performance of it, and it excused the defendant from paying the contract price, and left the parties in exactly the same condition as though no contract had been made, and therefore that the plaintiff is entitled to recover under the common counts for the value of materials furnished and labor performed."

The court refused to hold as law in the decision of the case the following written propositions of law, or either of them, submitted by counsel for defendant:

I.  " The court holds, as a matter of law, that under the agreed statement of facts in this case, the contract of April 4, 1893, between the plaintiff and defendant, under which the plaintiff furnished the goods and did the work for which it seeks to recover, was a contract for the sale of chattels, and that at the time of the fire the title to said chattels remained in, and the loss thereof must fall upon, the plaintiff, and therefore the plaintiff can not recover.

II.  " The court holds, as a matter of law, that under the agreed facts in this case, there was no implied obligation on the part of the defendant that the building in which the ventilating system was to be installed should remain in existence until the expiration of the time within which the plaintiff was to perform his contract, and that as the facts are that the building was not in the control of defendant, that the fire was an inevitable casualty which occurred without its neglect or default, or through its agency, that no benefit accrued to the defendant for the goods furnished or the work done under the contract, and that at the time of the fire the plaintiff's contract had not been substantially performed, or the work accepted, the plaintiff can not recover in this action.

III.  " The court holds, as a matter of law, that under the agreed facts in this case, the plaintiff can not recover.

IV.  " The court holds, as a matter of law, that as the contract in this case was not performed on the part of the plaintiff, or its performance prevented by or through the act, neglect, default or agency of the defendant, the plaintiff can not recover on the *quantum meruit.*"

Where, from the nature of a contract, the parties have contemplated the continuing existence of some particular specified thing as the foundation of what was to be done, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the accidental perishing of the thing without the fault of either party.  Wells v. Calnan, 107 Mass. 554–517; Taylor v. Caldwell, 3 Best.& Smith, 826.

Such was a rule of the civil law.  Pothier Traites des Obligations, partie 3, Chap. 6, Art. 3, Sec. 668:

" Si Stichus certo die dari promissus, ante diem moriatur; non tenetur promissor."

It being undertaken that by a certain day, Stichus (a slave) shall be delivered, if before the day he dies, the obligation is at an end.  Digest lib. 45, tit. 1.

Such is the rule of the common law in respect to promises to marry.

If the promisor dies before the time at which the nuptials were to be celebrated, the executors of the deceased are not liable.  Hyde v. The Dean of Windsor, Cro. Eliz. 552, 553.

And such also is the rule with respect to an author who undertakes to compose a work, and dies before completing it; his executors are discharged from the contract, for it was personal in its nature.  2 Williams on Exctrs. 560, 5th Ed.; Hall v. Wright, E. B. & E. 746–749.

Ordinarily, he who undertakes to do a thing, not manifestly impossible, must perform, whatever accidents may happen, for it was his folly to have so promised.  1 Roll. Abr. 450, Condition G;  Walton v. Waterhouse, 2 Williams'

Saunders, 421, 5th Ed.; Hall v. Wright, E. B. & E. 746; School Trustees v. Bennett et al., 3 Dutcher (N. J.) 513; Hawley v. Florsheim, 44 Ill. App. 320–323.

In cases where the performance is personal, and therefore, the person dying, the contract is at an end, the party who has partly performed can not recover upon a *quantum meruit* an amount which never became due. Lee v. Griffin, 1 Best & Smith, 272; Hyde v. The Dean of Windsor, Cro. Eliz. 552, 553; Hall v. Wright, E. B. & E. 746–749.

Where the continued existence of the thing upon which work is to be done is presupposed by the contract, one contracting to make certain additions thereto is not entitled to be paid the value of the work already performed when the thing whose existence is essential to performance is, without fault, destroyed.

The contract, if thus untimely ended, without fault of any one, gives to the parties thereto, as against each other, neither equities nor rights. Neither being at fault, the loss falls on him whose hopes have been dashed or property destroyed.

The woman engaged to marry a prince can not, when he dies before default, recover damages of his executors. The man who has undertaken to place in a house a ventilating system capable of removal, and which, when destroyed by fire, was his property, loses what he had already done.

In contracts in which performance depends on the continued existence of a given person or thing, a condition is implied that performance is excused by the perishing of such person or thing. Taylor v. Caldwell, 3 Best & Smith, 826, 839, 840; Sparrow v. Songate, W. Jones, 29; Williams v. Lloyd, W. Jones, 179; Coggs v. Bernard, 1 Smith's Leading Cases, 171, 5th Ed.; Appleby v. Myers, 3 C. P. Cases, 651–660; Howell v. Coupland, 9 Q. B. 462; Howell v. Coupland, 1 Q. B. D. 258; Cook et al. v. McCabe, 53 Wis. 250–258.

Where a contract amounts to a bargain and sale of a specific chattel, to be delivered by the vendor at a future day, if the chattel, without the fault of the vendor, perish in the interval, the purchaser must pay the price, while the

vendor is excused from a performance which has thus become impossible. The loss falls on him whose property was, without fault of any one, destroyed. Taylor v. Caldwell, 3 B. & S. 837.

It has been held that a party contracting to repair a building, if the work put from time to time thereon is of such a nature that it, as done, becomes a part of the structure, and thus the property of the owner, if the building without fault be destroyed, the entire loss falls upon such owner, and he must pay the value of the repairs already made. Cleary v. Sohier, 120 Mass. 210.

So too, if the contractor for work upon a building at the time of its destruction was entitled to be paid certain amounts, the loss falls upon the owner, who must pay the sum already by him owing.

Of the cases to which attention is called by appellee, in Schwartz v. Saunders, 46 Ill. 18, the contractor, under the terms of the contract to do merely the carpenter work of a building being erected, had earned, and there was due to him, the amount for which he was allowed a lien.

In Clark v. Busse, 82 Ill. 515, the contractor recovered because when the building was destroyed his work was substantially done.

In Rawson v. Clark, 70 Ill. 656, but for the conduct of the owner the contractor would have completed his work before the building was burned.

In Cleary v. Sohier, 120 Mass. 210, the material furnished, lath and plaster, became at once, when put into place upon the building, a part of it, real property, belonging to the owner of the structure.

The case of Cook et al. v. McCabe, 53 Wis. 250, recognizes the principle herein set forth, that the perishing of a thing whose existence is essential to performance, excuses compliance, and that the loss falls upon him whose property is destroyed, " especially," as is there said, " where he has the same insured at the time for his benefit."

In Niblo v. Binsse, 1 Keys, 476, the *owner* of a building, who had retained possession and control of the same, was

made to pay for work done by contract thereon; it being apparent that the owner, who had, as provided by the contract, paid $7,500 for work already done, was, when the fire occurred, the owner of the work which had then been performed.

Siegel, Cooper & Co. v. Eaton & Prince Co., 60 Ill. App. 639, we are now satisfied was wrongly decided as to $150 not due at the time the premises were destroyed; we adhere to the rule under which the amount due, $1,250, was there allowed.

In such a case as the present, where nothing was due, and the premises are destroyed without fault upon either side, it is an equal misfortune, and neither can recover from the other. Appleby v. Myers, L. R., 2 C. P. Cases, 651, 659; The Pike Electric Co. v. The Richardson Drug Co., 42 Mo. App. 272; Fairbanks v. The Richardson Drug Co., 42 Mo. App. 262; Bacon v. Cobb, 45 Ill. 47; Howell v. Coupland, L. R., 9 Q. B. 462.

We are unable to see, admitting that the contract to install this ventilating plant was terminated by the fire, upon what principle there arose therefrom an obligation upon the part of appellant to pay the value of work previously done. No one was at fault; all had been transacted in perfect good faith. The property when destroyed was clearly that of appellee. Why, then, should appellant be compelled to pay for what he never owned or owed for, and from which he had derived no benefit?

It is urged that appellant impliedly contracted that the building in which the ventilating apparatus was to be placed, should continue to exist, and be in a fit condition for the reception of such apparatus.

Appellant did not own or have control of such building; and why an implication should be made that appellant so contracted and that appellee did not, is not clear. The implied contract in this regard was that appellant could and would give to appellee reasonable access and opportunity to place the ventilating apparatus in said building; that appellant would not in any way or manner hinder or delay ap-

pellee in doing the work, and that the building, the continued existence of which was necessary to the doing the work, should neither directly or by negligence of appellant be rendered unfit for the purposes for which appellee was to use it.  2 C. P. Cases, 651, 659,661; Taylor v. Caldwell, 3 Best & Smith, 826, 832, 839; Howell v. Coupland, 9 Q. Bench, 462, 465, 467.

The judgment of the Circuit Court is reversed.  A judgment will be here entered for the defendant.

MR. PRESIDING JUSTICE GARY DISSENTING.

It may be laid down as universally true that all contracts, not of record nor under seal, whether written or spoken, expressed or implied, are of the same dignity, and of equally binding force; and that every promise accepted, of which performance by the promisor requires the co-operation of the promisee, implies, by such acceptance, a promise of such co-operation.

To the first of the above propositions I cite 1 Ch. Cont. 5; to the second the authorities cited on page 239 in Morier v. Moran, 58 Ill. App. 235.  And therefore if one contracts to put repairs or additions to something of which the other, as between themselves, has possession and control, that other, accepting such contract, impliedly undertakes that the thing to be repaired, or added to, shall be in condition to receive such repairs or additions.

I am therefore of opinion that Siegel v. Eaton, 60 Ill. App. 639, was rightly decided, and that the judgment in this case should be affirmed.